CHARLES G. MACINTOSH *vs.* JEREMIAH BARTLETT *et al.*

Cumberland.    Decided August 4, 1877.

*Exceptions.*

Exceptions of a general character cannot be sustained where any of the instructions excepted to are found correct.

ON EXCEPTIONS from the superior court, and MOTION to set aside the verdict.

TRESPASS for assault and battery, committed by the defendants upon the person of the plaintiff, at Bryant's Pond, July 18, 1876, by reason of which the plaintiff, as he said, received serious injury to his person, causing him great pain and sleepless nights, obliging him to resort to blisters upon his arms, and subjecting him to outrage to his person and public degradation. His counsel states the case thus: That the plaintiff, fifty three years old, a manufacturer engaged in buying, selling and pulling wool, who never, prior to this affair, was assaulted by any person, and who never assaulted any person, went to Bryant's Pond, where the defendants resided, for the purpose of inspecting and overseeing the packing of a lot of wool in the hands of the defendants, purchased by them for Elias Thomas & Co., of Portland, which wool, or so much as was merchantable, it was expected Morrill was to take at two cents advance upon each pound delivered. That just before noon, the plaintiff was introduced to the defendants, who were father and son, by Mr. Marshall, at the store of the son; that he disclosed to them his business; that upon inquiry he found the defendants had purchased more wool than he expected they would purchase,

and, wool having declined in price, he complained that defendants had exceeded their authority, and had purchased after the decline, paying more than they ought to have paid; that at his request he examined the wool with the younger Bartlett, and complained that the fleeces contained dirty wool; that the son informed him that the wool could not be packed that afternoon as it was not all in, and thereupon ordered his horse and left the store; that after dinner Mr. Macintosh went to the store again, and there had some words with the father, and then telegraphed to Mr. Thomas for instructions; that the reply came just before the arrival of the train, and Macintosh, without waiting for it to be written out went to the store, where both defendants were, and communicated the dispatch; that thereupon the young man said that Thomas should not have the wool at all, and that plaintiff should not touch it; that plaintiff went back to the depot, and receiving the written dispatch from the operator, returned to the store and offered it to the son; that further words passed between them, when the plaintiff started out of the store on to the platform; that thereupon both father and son assaulted him, and he backed toward the depot, both defendants following him, and that he had gone fifteen or twenty feet from the platform when he was thrown or fell to the ground, the Bartletts falling on top of him; that assistance came and the parties were separated, and the plaintiff returned to his home after completing his tour of inspection; that the assault was in the highway, in the presence of many people, and in the daytime. But the plaintiff says in addition that the assault upon him was without the slightest justification; that the defendants, angry because the unmerchantable condition of their wool was discovered, covered him with oaths and abuse, and finally whilst he was retreating towards the depot and making the best of his way from their presence, set upon him and followed him up with blows and kicks, kicking him even after he was upon the ground.

The plea was not guilty, with a specification of self defense. The defendants testified to very abusive language, and epithets by the plaintiff, and that his whole manner was exceedingly provoking; that he first assaulted one of the defendants, the son, by striking at him and immediately the parties were in the street, the

plaintiff down, the defendant on one knee holding him by the collar; that the plaintiff kicked out toward the father who then caught his leg ; that neither of the defendants struck.

The exceptions state that among other instructions the judge instructed the jury as follows, which were all the instructions given upon these branches of the case.   Then followed six printed pages of this size, containing in general the legal definitions of assault and battery, with illustrations, followed by instructions upon the right of self defense, with its limitations, and closing as follows :

"As a general rule, the theory of the law is that damages should be compensatory ; that they should be such a sum as would compensate the injured party for injuries he proves he has sustained. In this case, the plaintiff, if entitled to recover, is entitled to recover compensatory damages, damages for the actual injury he has sustained.   That is to say, whatever loss of services he has sustained, whatever diminished capacity to labor has resulted from the wrong of the defendants, whatever expense of medical attendance he has incurred, and whatever physical pain he has suffered, the law allows as elements of damage.   Of course the law can give you no rule by which to compute it.   It merely says the jury may consider that, as an element of damage, and allow such sum as in their good judgment is proper.   The plaintiff, if entitled to recover in an action of this sort, is not limited to loss of dollars and cents, but he is entitled to recover such reasonable sum as the jury fix upon for the insult, for the sense of disgrace and degradation attending a public assault.

" Every man's self respect, every man's pride of character, are just as much under the protection of the law as his property or his person, and if a man is exposed to public and wanton assault, then the law allows the jury to consider as a part of the compensatory damages the injury to his feelings, loss of self respect, sense of disgrace, and fix such sum as they deem proper by the way of compensation for such insult.

" Thus far, if the defendants are liable at all, the plaintiff is entitled to recover as matter of right.   Then there is another branch of the subject of damages which is entirely distinct from that.   If you award damages to the plaintiff to the extent I have

indicated, he will have recovered full compensation for the loss he has sustained. But in cases of gross, wanton, malicious injury, the law allows the jury, never requires them, if they deem right and proper to allow a reasonable sum, such sum as they determine in their discretion, not by way of compensation to the plaintiff, but by way of penalty to the defendant. That is, in a certain sense, it blends the interest of the plaintiff with the interest of the community, and allows the plaintiff to recover a certain sum as a penalty to the defendant for the wrong he has done, and by way of deterring him from the repetition of the offense.

"That is not a legal right. The plaintiff has in no case a legal right to recover it; it is a question resting in the sound discretion of the jury in a case of gross injury, in which the law gives them the power to award such damage if they see fit.

"Upon this branch of the case the wealth of the defendant has been received in testimony. In cases of this sort the law allows the reputation of the defendants for wealth to be put in. That is upon the theory that a gross and aggravated assault is attended with greater injury to a man when it comes from a person of wealth and standing in the community than from a person without wealth and standing. And upon the question of exemplary damages, the actual wealth of the defendant is allowed to be shown so that the jury can consider that, in determining what amount to award by way of exemplary damages."

The verdict was for the plaintiff for $1,391; and the defendants filed exceptions, and also a motion to set aside the verdict on the grounds that it was against law, the charge of the justice, and against evidence, that the damages were excessive, and that it was the result of bias or prejudice.

*S. C. Strout & H. W. Gage*, for the defendants.

*A. A. Strout & G. F. Holmes*, for the plaintiff.

BARROWS, J. The exceptions are taken to the bulk of the charge, in fact, "to all of the instructions" given upon the principal branches of the case.

It has been held that exceptions of this general character cannot be sustained if any of the instructions are found correct. *Beaver* v. *Taylor*, 3 Otto, 46.

Sufficient warning has been given that this court is not disposed to entertain exceptions thus taken. *State* v. *Reed,* 62 Maine, 129, 135. *State* v. *Pike,* 65 Maine, 111.

In addition to these cases it has now been directly decided in *Harriman* v. *Sanger* (in Penobscot county, not yet announced) that the exceptions must specify the rulings and instructions to which they are designed to apply, and, if taken in gross, will not be considered. As to the greater part of the instructions here reported as excepted to, it must be said that their accuracy and pertinency are manifest at a glance. Many of them are favorable to the defendants. Indeed the defendants base their motion to set aside the verdict of the jury in part upon the allegation that it "is against law and evidence, and the charge of the justice."

We do not feel called upon to consider the exceptions to the charge more particularly. The offer of defendants to prove that plaintiff was an irritating and provoking man, and had trouble with others in reference to similar transactions was rightly overruled.

The damages are manifestly excessive, and the finding must have been the result of some improper bias or prejudice. The testimony discloses nothing which justifies so large a verdict either for compensation of the plaintiff or as punishment of the defendants.

The motion must be sustained unless the plaintiff will remit all over four hundred dollars.

> *Exceptions overruled. Motion sustained unless plaintiff will remit all over $400. If he so remits, Motion and Exceptions overruled.*

APPLETON, C. J., WALTON, VIRGIN, PETERS and LIBBEY, JJ., concurred.