## BEAVER *v.* TAYLOR ET AL.

1. If one of a series of propositions presented to a court as one request for a charge to the jury is unsound, an exception to a refusal to charge the entire series cannot be maintained.
2. An exception to the entire charge of the court, or, in gross, to a series of propositions therein contained, cannot be sustained, if any portion thus excepted to is sound.
3. An exception to such portions of a charge as are variant from the requests made by a party not pointing out the variances, cannot be sustained.

ERROR to the Circuit Court of the United States for the Southern District of Illinois.

This was ejectment brought by plaintiff in error, to recover an undivided sixth part of the north-west quarter of section thirty-six, the north-east fractional quarter of section twenty-seven, the south fractional half of section twenty-six, and the north-east fractional quarter of section thirty-five, in township seventeen south, range one west, situated in the county of Alexander and State of Illinois, at or near the junction of the

Ohio and Mississippi Rivers. The case was tried before a jury, who found the issue for the defendants. A motion for a new trial was made; and thereupon defendants filed a stipulation, that the verdict might be so modified as to show a verdict for the plaintiff in fee-simple to the undivided sixth part of north-east fractional quarter of section twenty-seven, and that judgment might be entered therefor *non obstante veredicto.* Plaintiff refused to consent to said stipulation; and thereupon the motion for a new trial was overruled, and judgment entered for the defendants. It was admitted, on the trial, that the plaintiff at the time of the institution of the suit, July 17, 1854, and at the time of the alleged entry of the defendants, was the owner in fee of one undivided sixth part of the premises mentioned in the declaration, by title derived from Isabella F. Bond, through Joseph B. Holmes, unless said title was barred or divested by the evidence submitted on the part of the defendants; and that the defendants at the same time were the owners in fee of the other five-sixths of said premises, and exercising acts of ownership over the entire premises. The title of defendants to the one-sixth claimed by the plaintiff is based on a claim and color of title to, and seven successive years' possession and payment of taxes upon, the said one-sixth, under sect. 1, of the act of the legislature of March 2, 1839, which is as follows: —

" Every person in the actual possession of lands or tenements, under claim and color of title, made in good faith, and who shall, for seven successive years, continue in such possession, and shall also, during said time, pay all taxes legally assessed on such lands or tenements, shall be held and adjudged to be the legal owners of said lands or tenements, to the extent and according to the purport of his or her paper-title. All persons holding under such possession, by purchase, devise, or descent, before said seven years shall have expired, and who shall continue such possession, and continue to pay the taxes as aforesaid, so as to complete the possession and payment of taxes for the term aforesaid, shall be entitled to the benefit of this section." Rev. Stat. 1874, p. 674.

The defendants, for the purpose of showing claim and color of title made in good faith, introduced in evidence, without objection, a deed from Achsah Bond, as guardian of said Isa-

bella F. Bond, to the Cairo City and Canal Company, of whom the defendants were admitted to be trustees.

The plaintiff requested the court to charge the jury as follows : —

1. It devolves upon the defendants, who rely upon this section of law as a defence to the plaintiffs' action, to prove to the satisfaction of the jury that they, the defendants, or those under and through whom they claim color of title, have had the actual possession of the tracts of land in question for seven successive years prior to the seventeenth day of July, 1854, the date when this action was commenced; that they have paid all taxes legally assessed on the lands during the same seven years.

2. The good faith of the claim and color of title will be presumed, unless, from the evidence, it is made to appear otherwise. If the jury shall find from the evidence that Taylor and Gilbert, the defendants, in 1854, tendered to Craig, the husband of Isabella F. Bond, $2,200, in payment for his wife's interest in the lands in controversy, that is a circumstance that may be taken into consideration, in connection with the other evidence in the case, as tending to rebut the presumption of good faith of defendants under what they have produced as color of title.

3. If, in this case, it shall appear from the evidence that the taxes for any one or more of the seven successive years were paid by Miles A. Gilbert for his own benefit, the payment of taxes cannot avail Taylor and Davis and those claiming under them ; the jury are to determine, from all the evidence in the case, whether all the taxes for said seven years were paid on account of Taylor and Davis, or whether for a portion of that time they were paid on account of Miles A. Gilbert.

4. To make out the actual possession of the lands in question, it must appear from the evidence that the defendants, or those under and through whom they claim, during the whole period of seven successive years prior to the seventeenth day of July, 1854, had possession adverse to the legal claim of Isabella F. Bond and those claiming through her. During the whole of that time their possession must have been visibly notorious and exclusive; it must have been manifested by such unequivocal acts of dominion over the lands as would have given the owner of the lands, on reasonable inquiry, constant notice that the

party or persons in possession were using and claiming the lands exclusively as their own.

5. The defendants, to prevent a recovery in this case, must, as to each tract of land in dispute, show, by a preponderance of evidence, actual, visible, open, and notorious possession of the particular tract as to which the jury is inquiring. Possession by defendants of premises not claimed by plaintiff will not make out a defence as to any of the tracts in dispute, nor will possession by defendants of one distinct tract of the several tracts in controversy make out a defence as to any other tract or tracts in dispute.

6. The law permits one tenant in common to possess, use, and enjoy the lands owned by himself and co-tenant, without prejudice to the rights of an absent co-tenant in common. The first section of the limitation law of March 2, 1839, cannot be successfully invoked as a defence to an act of ejectment instituted by the tenant in common out of possession, unless there is evidence to satisfy the jury that the defendant or defendants, the co-tenant or co-tenants in common in possession, has or have been in the open, well-known, exclusive, and adverse possession, claiming the whole of the lands in question for the full period of seven successive years prior to the commencement of such action. The payment of all the taxes assessed on land or lands owned in common by one of the co-tenants is not of itself evidence of an adverse possession on the part of the party who so pays, or who has so paid, the taxes, as against the co-tenant or co-tenants in common out of possession.

7. If in this case the jury are satisfied, from the evidence, that Taylor and Davis, or their agents, up to the year 1850, did no act or acts in and about their alleged possession of the lands in question, except such acts as co-tenants in common had a lawful right to do towards the improvement of said tracts of land, or that they did such acts only as they were legally authorized to do by virtue of the charter to the Cairo City and Canal Company and the deed of release from Achsah Bond, the guardian of Isabella F. Bond, the plaintiff is entitled to recover to the extent as claimed in his declaration, subject to such rights in and over the lands in question as may be claimed

under said charter and the deed of release executed by the guardian of said Isabella F. Bond.

8. The building of dykes, levees, and embankments, for the security and preservation of the city of Cairo, and for the security and preservation of said city and land, and all improvements thereon, from all and every inundation which could possibly affect or injure said city or the improvements therein, was authorized by the first section of the act incorporating the Cairo City and Canal Company, approved March 4, 1837; and the mode of procuring a release of damages occasioned by such building of dykes, levees, and embankments, was provided for by the same act. The deed of release executed to said company by the guardian of Isabella F Bond, who, at the time, was a minor, was a sufficient authority to said company to warrant them in constructing dykes, levees, and embankments over and across the lands belonging to said 'minor; but the construction of such improvements was not, and is not, to be taken of itself as evidence of a denial on the part of said company of the legal title and right of possession of said minor, and of those claiming through and under her, to the lands owned by said minor over and across which said improvements may have been constructed.

The court declined to so charge the jury on either and all of said points, as requested by the plaintiff; and, instead thereof, charged and instructed them as follows: —

This suit is brought to recover one-sixth of certain tracts of land in Cairo. Beaver shows title from the government through Isabella F. Bond, who sold it to Holmes, and from whom Beaver bought it. Before Isabella F. Bond sold it to Holmes, in 1852, her guardian, Achsah Bond, on the 22d of May, 1837, reciting the act of the legislature passed March 4, 1837, empowering guardians to release the damages and interest of their wards in lands which the Cairo City Company might take for their use, sold the share of Isabella F. Bond to the Cairo City and Canal Company.

This deed, in the opinion of the court, does not in itself convey title, as the authority conferred by the legislature did not extend to the selling of the land. The plaintiff is therefore entitled to recover, unless the defendants bring themselves

within the provisions of the first section of the act of the legislature of March 2, 1839. By that section, although a paper-title may be defective and fail to divert the title, yet if the purchaser bought the land in good faith, supposing he had a title, the deed he has got can be used as color of title; and if he, under the claim of title, takes possession of the lands, and continues in possession of them for seven years, and pays the taxes on them for the same time, then he is as much the owner of the lands as if his paper-title was perfect.

The court instructs the jury that the deed from Achsah Bond is color of title, within the meaning of the statute, to one-sixth part of the land in controversy. Good faith in buying the property, possession of it for seven years, and payment of taxes during that period, must concur, in order to bring the defendant within the terms of the statute.

Good faith is presumed in the absence of proof to the contrary; and where there is no actual fraud and no proof showing that the color of title was acquired in bad faith, which means in or by fraud, then the title was acquired in good faith. On the question of the payment of taxes, the law is, that the taxes must be paid for the benefit of the party claiming the title.

Gilbert bought these lands in his own name at a tax sale in 1843 and 1845, as he swears, for the benefit of the company, and with their money, for the purpose of getting rid of an old tax-title, being at the time the general agent of the company.

The taxes on the land for 1846 and 1847 were paid in the name of Gilbert, but, as he testifies, with the funds of the company and for their benefit. If the jury believe this testimony is true, then it was a good payment of taxes by the company for those years; and as to the payment of taxes for the remainder of the seven years, there is no question but what they were paid by the company.

In order to defeat the plaintiff's title, the defendants must have had actual possession of the land; but actual possession, in the meaning of the statute, does not require a residence on the lands, nor their enclosure by a fence. If the lands were occupied in such a manner by the defendants as to convey a constant notice to the plaintiff, or those under whom he derives title, that they were claimed adversely to him or them, then

they were, in the sense of the limitation law, in the actual possession of the defendants. In other words, if Isabella F. Bond, or the party claiming under her, could, by visiting the lands, readily see that they were in the actual occupation of the defendants, the statute is complied with. The adverse occupation must have continued for the full period of seven years before the suit was commenced, in order to bar the plaintiff.

It must have been, during all this period, a continuous occupation, and also an undivided one. In this case, the possession by the State of the ten acres now the possession by heirs of Mackenzie does not affect the rights of the parties. But if Galtin was in possession adversely to the defendants, then their possession is not an undivided one to the north-east fractional quarter of section five, on which Galtin had his possession. But if he was in possession under the defendants, or if Gray and Simmons, from whom he bought, were in possession under them, then his possession is consistent with the rights of the defendants, and he had no interest adverse to them; but his possession was the possession of the defendants.

There is no arbitrary rule in relation to what constitutes, under the law, actual possession. There must always be such a manifestation on the part of the claimant as to convey notice to the holder of the legal title that he is claiming adversely to his or her interest. The way in which this is done may be very different in the case of a tract of land for a farm, or tracts of land purchased for the purpose of being laid out into city lots.

The legislature of Illinois incorporated in 1837 the Cairo City and Canal Company, and authorized them to purchase the whole of township seventeen, and to lay the whole, or such parts of it as they saw fit, into city lots. If the jury believe from the evidence that the company did purchase the tracts of land in controversy (all being in township seventeen) for purposes authorized by the statute; and that during the period of seven years, before this suit was begun, the defendants constructed levees and embankments for the purpose not only of preserving the then city of Cairo from inundation, but also these lands, with a design of ultimately incorporating them into the city; and that these levees and embankments enclosed or crossed parts of the lands, so that the legal owner of the interest in controversy

could readily see that they were occupied by the defendants; and timber was cut upon them in such manner by the defendants, or those having permission from them, as to convey notice to the owner of the adverse interest, — then the defendants had such possession under color of title as will protect them.

If, on the contrary, the levees and embankments were constructed for the sole purpose of protecting the then city of Cairo, and the cutting of the timber was done in such a manner that the party holding the legal title could not see that it was done, then the defendants are not protected. If the embankments were made to protect these lands, as well as what was then known as the city of Cairo, and they run across a part of them, and all the lands were designed for a common purpose, then the occupation by the levees of a part of the lands was the occupation of the whole.

The rights of a tenant in common are not involved in this controversy. If the defendants believed that they purchased the interest of Isabella F. Bond, and occupied the premises adversely to her interest, they are protected, notwithstanding the interest was undivided, they owning the remaining five-sixths.

The construction of levees by the Illinois Central Railroad before the suit was commenced, under contract with the defendants, serves the same purpose as if they were constructed by the defendants.

The plaintiff is entitled to recover the one-sixth of north-east fractional quarter of twenty-seven, there being no disclaimer of title by the defendants, unless the same was occupied by the defendants adversely for seven years prior to the bringing of this suit, it making no difference under the state of the pleadings whether the land has been washed away by the Mississippi River or not.

The plaintiff at the time excepted to the refusal of the court to charge the jury on the several points of law as by him requested, and also excepted at the time to so much of the charge of the court as given, as in conflict with and variant from the several propositions urged and submitted as the law by and on behalf of the plaintiff. The jury found that defendants were in possession of the premises and paid the taxes for

seven successive years, as required by the statute; and the only questions in the case arise upon the charge of the court to the jury, and its refusal to give the instructions, as asked.

Submitted on printed argument by *Mr. Lyman Trumbull* for the defendants in error. No counsel appeared for the plaintiff in error.

MR. JUSTICE HUNT delivered the opinion of the court.

This action was ejectment to recover an undivided interest in certain lands situate in Cairo, Ill. The defence was actual possession under claim and color of title for seven successive years, and payment during that period of all taxes legally assessed upon the premises claimed. Rev. Stat. of Ill., 1874, p. 674.

Evidence was given sustaining the defence, and a verdict by the jury was rendered in favor of the defendants.

Before the case was submitted to the jury, the plaintiff requested the court to charge, as set forth by him, in eight several propositions. The court declined to charge as requested, but charged in its own language, and fully, upon the case as presented by the evidence.

The plaintiff excepted to the refusal of the court, and excepted also " to so much of the charge of the court as given, as was in conflict with and variant from the several propositions " presented by him.

It is upon this presentation of the case that this court is asked to reverse the judgment entered upon the verdict.

1. The entire series of propositions was presented as one request; and, if any one proposition was unsound, an exception to a refusal to charge the series cannot be maintained. 11 N. Y. 416; 6 id. 233; 7 id. 236. All of the propositions presented were not sound; notably the fifth request could not be complied with.

2. If the entire charge of the court is excepted to, or a series of propositions contained in it is excepted to in gross, and any portion thus excepted to is sound, the exception cannot be sustained. *Rogers* v. *The Marshal*, 1 Wall. 644; *Harvey* v. *Tyler*, 2 id. 328; 5 Denio, 213; *Jones* v. *Osgood*, 2 Seld. 233; *Caldwell* v. *Murphy*, 11 N. Y. 416; *Walsh* v. *Kelly*, 40 id. 556. The charge before us was confessedly sound in the most of its points.

3. An exception to such portions of a charge as are variant. from the requests made by a party, not pointing out the variances, cannot be sustained. 40 N. Y. 556; 45 id. 129; 47 id. 570. It is not the duty of a judge at the circuit court, or of an appellate court, to analyze and compare the requests and the charge, to discover what are the portions thus excepted to. One object of an exception is to call the attention of the circuit judge to the precise point as to which it is supposed he has erred, that he may then and there consider it, and give new and different instructions to the jury, if in his judgment it should be proper to do so. *Ayrault* v. *The Pacific Bank,* 47 N. Y. 576. An exception in the form we are considering entirely defeats that object.

For these three reasons, the bill of exceptions fails to present any point that we can consider.

We are also of the opinion, upon an examination of the record, that the case was well submitted to the jury, and that the plaintiff has no just ground of complaint.

*Judgment affirmed.*