## MITCHELL v. POTOMAC INSURANCE COMPANY.

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 51. Argued October 23, 24, 1901. — Decided November 11, 1901.

The Potomac Company insured Mitchell in a sum not exceeding five thousand dollars on his stock of stoves and their findings, tins and tinware, tools of trade, etc., kept for sale in a first-class retail stove and tin store in Georgetown, D. C., with a privilege granted to keep not more than five barrels of gasoline or other oil or vapor. The policy also contained the following provisions: "It being covenanted as conditions of this contract that this company . . . shall not be liable . . . for loss caused by lightning or explosions of any kind unless fire ensues, and then for the loss or damage by fire only." "Or if gunpowder, phosphorus, naphtha, benzine, or crude earth or coal oils are kept on the premises, or if camphene, burning fluid, or refined coal or earth oils are kept for sale, stored or used on the premises, in quantities exceeding one barrel at any one time without written consent, or if the risk be increased by any means within the control . . . of the assured, this policy shall be void." An extra premium was charged for this gasoline privilege. A fire took place in which the damage to the insured stock amounted to $4568.50. This fire was due to an explosion which caused the falling of the building and the crushing of the stock. Mitchell claimed that there was evidence of a fire in the back cellar which caused that explosion, and that the explosion

was therefore but an incident in the progress of the fire, and that the company was therefore liable on the policy. The court instructed the jury that if there existed upon the premises a fire, and that the explosion, if there was an explosion, followed as an incident to that fire, then the loss to the plaintiff would be really occasioned by the fire, for the explosion would be nothing but an incident to fire; but if the explosion were not an incident to a precedent fire, but was the origin and the direct cause of the loss, then there was no destruction by fire, and the plaintiff was not entitled to recover anything from the defendant. *Held :*

(1) That it was not important to inquire whether there was any evidence tending to prove the existence of the alleged fire in the front cellar because the submission of the question to the jury was all that the plaintiff could ask, and the verdict negatives its existence.

(2) That there was no evidence of any fire in the back cellar preceding the lighting of the match in the front cellar.

(3) That the instructions in regard to gasoline as more fully set forth in the opinion of this court were correct.

The court further charged the jury: (1) That if the loss was caused solely by an explosion or ignition of explosive matter, not caused by a precedent fire, the plaintiff cannot recover; (2) that if an explosion occurred from contact of escaping vapor with a match lighted and held by an employé of the plaintiff, and the loss resulted solely from such explosion, the verdict must be for the defendant; (3) that a match lighted and held by an employé of the plaintiff coming in contact with vapor and causing an explosion, is not to be considered as "fire." within the meaning of the policy. *Held*, that each of these instructions was correct.

There is no error in the other extracts from the charge set forth in the opinion of this court.

THE statement of the case will be found in the opinion of the court.

*Mr. Samuel Maddox* for plaintiff in error.

*Mr. J. Holdsworth Gordon* for defendant in error.

MR. JUSTICE PECKHAM delivered the opinion of the court.

This is an action brought by the plaintiff in error upon a policy of insurance issued by the defendant. On the trial the insurance company had a verdict upon which judgment was entered, and the Court of Appeals of the District of Columbia having affirmed it, (16 App. Cas. D. C. 241,) the plaintiff has brought the case here. The policy was for $5000 on the plain-

tiff's stock in trade, which was destroyed on September 27, 1896. The property insured was described in the written part of the policy as follows:

"On his stock of stoves and their findings, tins and tinware, tools of trade, and such other goods kept for sale in a first-class retail stove and tin store, situate No. 3108 M street, Georgetown, D. C.

"Privilege granted to keep not more (than) five (5) barrels of gasoline or other oil or vapor."

The policy also contained the following printed indemnity clause:

"Against all such immediate loss or damage as may occur by fire to the property specified, not exceeding the sum insured, nor the interest of the assured in the property, except as hereinafter provided. . . ."

In finer print are the following conditions and exceptions among others:

"It being convenanted as conditions of this contract that this company . . . shall not be liable . . . for loss caused by lightning or explosions of any kind unless fire ensues, and then for the loss or damage by fire only.

"Or, if gunpowder, phosphorus, naphtha, benzine, or crude earth or coal oils are kept on the premises, or if camphene, burning fluid or refined coal or earth oils are kept for sale, stored or used on the premises, in quantities exceeding one barrel at any one time without written consent, . . . this policy shall be void."

The damage to the insured stock amounted to $4568.50 and was due to the falling of the building and the crushing of the stock as hereafter detailed. The defendant denied liability on the ground that the falling of the building and injury to the stock had been caused solely by explosion, no fire ensuing, and was therefore excepted from the policy.

An extra premium was charged for the gasoline privilege.

The plaintiff in error conducted a business at 3108 M street, Georgetown, D. C., in a two-story-and-attic brick structure, his stock consisting of stoves and tinware, and he did besides a general repairing business. There was a cellar under the build-

ing divided into two compartments by a division, with room for a doorway, but there was no door between the divisions. The gasoline which the insurance policy permitted the plaintiff to keep was stored in the cellar in a tank underneath the back cellar floor. Customers were supplied with gasoline from a pump which was operated in the back of the store above the cellar where the gasoline tank was. There was no gas jet in the cellar, and no artificial lighting of any kind. When near the door one could see without the use of a match, or candle, or any other light, but when seven or eight feet away it was necessary to have artificial light of some kind. In the front cellar stove castings and brick, surplus stoves and ranges were kept. Along the sides shelving was arranged upon which brick and castings were put. No trouble had been experienced with gasoline vapor on account of the furnace which was in the cellar, or from matches or candles which were used to light persons about. There was no fire in the furnace at the time of the loss. Frequently half a dozen candles were around on the floor when work was to be done. The back cellar was used for the same purpose as the front cellar, except that stoves were not put in there; it was lighted only by a small window looking out into the alley. Matches and candles were used in the back cellar as in the front. When the workmen found what they were looking for, it was customary to drop these charred matches upon the floor, or put them on the stoves or castings.

The clerk who went into the cellar on the occasion testified in regard to the disaster as follows:

"It was about one o'clock in the day. When I went down there was no odor of gasoline in the cellar. I know the odor, which is pungent, unmistakable and easily detected. The particular piece of casting that was wanted was in a tier of bins in the shelving on the east side of the main cellar and about fifteen feet from the back cellar. It was so far from the door that I could not see it without the use of a light. On reaching the tier I struck a match and looked in the particular place where we were accustomed to keep this kind of casting; but it was not there. As I had been away from the store three weeks previous and did not know to what bin in the shelves they had been

moved, I started looking from one to the other, beginning near the top. The first match burned my fingers, and I dropped it and lit another, with which I continued my search down, when all of a sudden the place was enveloped or filled with this blue flame. It was a bluish color, and I knew at once that it was gasoline vapor that had ignited. I knew it at once because I remembered the appearance of it—had seen it before. Where it started I do not know; but the first I knew of it, it was all over the place and I was in the midst of it. I don't know distinctly whether the blaze started at my hand or not. When I became conscious of the fact that there were flames there, it was all over the place; not only where I was, but all over the cellar. I noticed it first all over the cellar; there was no noise connected with it, except the sh-sh-sh like the swish of a whip or anything of that kind. I could see it play around. I became unconscious, either from the burns or from the walls falling on me, I don't know which. The first thing I noticed on recovering consciousness was the fact that the back cellar was full of fire, and, knowing that the gasoline was in that part of the cellar, I used every effort to get as far away from it as possible. I crawled towards the front, where I was pulled through the front wall. I had been protected from the débris by the way in which the joist fell. They broke in the middle, one end remaining on the east wall and the other resting on the floor, thus leaving a little angle at the side. This condition existed all the way to the front of the building. It was very dark—like the darkness of Egypt. The brick work was shattered in front and the house had fallen down."

Plaintiff in error claimed on the trial that there was evidence of a fire in the back cellar preceding the explosion and causing it, and that the explosion was therefore but an incident in the progress of the fire, and the company was therefore liable on the policy. He made the following request to charge the jury:

"If the jury find from the evidence that on the 28th day of September, 1896, at or before the time the witness Oliver went into the cellar of the plaintiff's premises, as described by him, a fire originating in accidental or other causes was in progress in the back cellar of said premises, and that afterward and

while such fire was in progress the gas or vapor generated by the evaporation of liquid gasoline came in contact with the flames of such fire and exploded and prostrated portions of the building in which the insured commodities were stored, then the damage done to such commodities by reason of such prostration was occasioned by fire within the meaning of the policy, and the plaintiff is entitled to recover in this action."

The court refused the request, and the exception to such refusal brings up the first question argued by the plaintiff in error.

In the course of the charge it was stated as follows:

"The court has granted an instruction to this effect, that if there existed upon the premises a fire, and that the explosion, if there was an explosion, followed as an incident to that fire, then the loss to the plaintiff would be really occasioned by the fire, but if the explosion were not an incident to a precedent fire, but was the origin and the direct cause of the loss, then there was no destruction by fire, and the plaintiff is not entitled to recover anything from the defendant."

It is not important to inquire whether there was in truth any evidence tending to prove the existence of a fire in the front cellar preceding the lighting of the match therein, because the submission of the question to the jury was all that the plaintiff could ask, and the verdict negatives its existence. But the court drew a distinction between the front and rear cellar, and refused the foregoing request by the plaintiff's counsel, for the reason given, as follows:

"The court was asked to instruct you with reference to the theory that there was a precedent fire in the back room. The court felt obliged to refuse such an instruction, because there is no testimony in the case that would justify the jury in reaching the conclusion that before Mr. Oliver struck that match there existed a fire in the rear portion of that cellar. There is no testimony and no evidence of the fact."

The court also charged as follows:

"It is not contended that any fire followed the explosion, and that any portion of this stock in trade was injured by a subsequent fire, but it is claimed by the plaintiff that there ex-

isted a precedent fire, and that the explosion was an incident of that precedent fire. The court has granted an instruction to the effect that if there existed upon the premises a fire, and that the explosion, if there was an explosion, followed as an incident to that fire, then the loss to the plaintiff would be really occasioned by the fire, for the explosion would be nothing but an incident to fire."

The court also charged:

" Now the question for you to determine in the light of all this testimony and your own knowledge and experience is this: Was the falling of this building and the injury to the stock in trade contained within it due to an explosion or not? If it was, and there was no antecedent fire, the verdict should be for the defendant. If you find in the case evidence that there was an antecedent fire, which did not amount to an explosion, but which was simply rapid combustion, which resulted in a collapse of the building and not in an explosion, then it is conceded that the plaintiff is entitled to recover such damages as you shall find that he sustained. If you find a verdict for the plaintiff, you ought to give him interest on the amount to which he is entitled from the 19th day of January, 1897. You may take the case, gentlemen."

With relation to the denial of the request of plaintiff's counsel, the Court of Appeals, in the opinion delivered by Mr. Justice Shepard, said:

" The instruction undertook to direct the special attention of the jury, first, to the probable existence of an accidental fire in the rear cellar before the entry of the witness Oliver into the front one, and second, to the probable ignition of the vapor in the front cellar by that fire instead of by the match lighted by Oliver immediately before the explosion, which took place in the front cellar. Neither of these inferences seemed to have any reasonable foundation in the evidence, and the second is directly opposed to the testimony of Oliver, upon which the plaintiff's case rests. Had this been the only issue in the case the court might, without error, have directed a verdict for the defendant. *Gunther* v. *Liverpool & London & Globe Ins. Co.*, 134 U. S. 110, 116." And also *Griggs* v. *Houston*, 104 U. S. 553.

A careful perusal of the evidence in the case brings us to the same conclusion. There was no evidence of any fire in the back cellar preceding the lighting of the match in the front cellar, and it would have been error to submit such a question to the jury for that reason. The request was therefore properly denied.

It is also contended that gasoline being kept for sale by the insured in his store, was covered by the written language of the policy, which included not only his stock of stoves, etc., but also " such other goods kept for sale in a first-class retail stove and tin store, situate No. 3108 M street, Georgetown, D. C." It is then argued that as gasoline is in its nature explosive, the risk arising therefrom was covered by the policy, and the loss occasioned thereby was one for which the company was liable, and if the printed provisions of the policy provided otherwise they are inconsistent with the written part of the policy, and the latter must prevail. This construction would render unnecessary the privilege to keep not more than five barrels of gasoline, which is also written in the policy. We think the construction contended for is inadmissible.

The language of the policy did not insure the plaintiff upon any property which he might choose to keep and sell in his store. The language means not only the particular property specifically described, but such other goods as are kept for sale in a first-class retail stove and tin store, which in this case was situated as stated in the policy. Identifying the store by naming its situation does not alter the significance of the language, in effect, prescribing that the goods are such as are kept for sale in a first-class retail stove and tin store. The " other goods " must be such as are ordinarily, usually, customarily kept for sale in a first-class retail stove and tin store, and not such other classes of property as the insured may then or at any time choose to keep for sale in this particular store. This we think is the plain meaning of the language. The cases cited in the opinion delivered in the Court of Appeals make this plain, if anything more than the language itself were wanted for that purpose. Unless gasoline is such a commodity as is usually kept for sale in a first-class retail stove and tin store, it would not be included

in that language. There is no evidence showing that gasoline is thus usually kept, and without evidence to that effect it cannot be presumed that such is the fact. The language which immediately follows, "privilege granted to keep not more than five barrels of gasoline or other oil or vapor," also tends to show quite conclusively that the parties did not consider the description already given of the property insured, as permitting the keeping and selling of gasoline, for otherwise the privilege would not have been necessary to be inserted in the policy.

Taking the written and the printed language of the policy together, there is no inconsistency therein. The extent and limits of the insurance are, as stated in the printed provision, "against all such immediate loss or damage as may occur by fire to the property specified, not exceeding the sum insured;" and there is the further condition, "it being covenanted as conditions of this contract that this company . . . shall not be liable . . . for loss caused by lightning or explosions of any kind unless fire ensues, and then for the loss or damage by fire only."

The written part insured the plaintiff on property therein described, which does not cover gasoline in the description of "other goods." What the insurance is and its limits are stated in the printed portions. Taking all the language together, the written and the printed, the contract is plain and unambiguous, without inconsistency or contradiction between the written and printed portions thereof, and therefore there is no room for the application of the principle that where such inconsistency or ambiguity exists the written portion prevails.

In regard to the keeping of gasoline for sale and the reason for writing the privilege to so keep it in the policy, and the effect thereof, the court charged as follows:

"You hardly need be told, I think, as ordinary business men, that a privilege to keep something does not bring the privileged article within the articles insured by the policy. Suppose that clause read 'privilege to keep not more than fifty pounds of gunpowder,' on the premises, and the party insured was keeping a dry goods store or a drug store, would it be contended by any sensible man that the gunpowder was an article insured

by the policy?  Clearly this privilege to keep was inserted to offset the forfeiture of the policy if the provision contained in this policy were violated without this privilege, and that provision is this:

"If gunpowder, phosphorus, naphtha, benzine or crude earth or coal oil are kept on the premises, or if camphene, burning fluid or refined coal or earth oils are kept for sale, stored or used on the premises in quantities exceeding one barrel at any one time, without written consent of the company, the policy should be void.

"So that if these five barrels of gasoline were kept upon those premises without the written consent of the company, the policy would have been absolutely forfeited and the plaintiff would not have been entitled to recover damages for loss if the whole stock had been destroyed by fire.  So it must be believed that the plaintiff, when he took his policy, fully understood what its terms and provisions were.  That is the reason that he asked for, received and paid for this privilege of keeping not more than five barrels of gasoline on the premises.  I suppose that inasmuch as keeping such inflammable material upon the premises would naturally increase the risk of loss, the insurance company would require the payment of a larger premium than it would have required if such inflammable material were not kept on the premises."

We regard this part of the charge as unexceptionable.

The plaintiff also claims that error was committed by the court in charging the jury, at the request of the defendant, in substance:

(1) If the loss was caused solely by an explosion or ignition of explosive matter, not caused by a precedent fire, the plaintiff cannot recover.

(2) If an explosion occurred from contact of escaping vapor with a match lighted and held by an employé of the plaintiff, and the loss resulted solely from such explosion, the verdict must be for the defendant.

(3) A match lighted and held by an employé of the plaintiff coming in contact with the vapor and causing an explosion is not to be considered as "fire" within the meaning of the policy.

We think each instruction was correct. A loss occurring solely from an explosion not resulting from a preceding fire is covered by the exception in the policy. And an explosion which occurred from contact of escaping vapor with a lighted match, under the facts stated, would also plainly come within the exception of the policy. Also a lighted match is not a "fire" when used as stated in the above third clause of the charge. *United Life &c. Insurance Company* v. *Foote*, 22 Ohio St. 340; *Transatlantic Fire Insurance Company* v. *Dorsey*, 56 Maryland, 70; *Briggs* v. *Insurance Company*, 53 N. Y. 446, 449.

Exception was also taken to the charge of the judge explaining the meaning of the word "explosion" as used in the policy. Upon that the court charged:

"Now, gentlemen of the jury, when the word 'explosion' was used in the policy, the company as ordinary men — at least its officers were ordinary men and not, as I assume, scientific men — and the party insured an ordinary man, are presumed to have understood the word 'explosion' in its ordinary and popular sense. Not what some scientific man would define to be an explosion, but what the ordinary man would understand to be meant by that word. And, after all, the question here being explosion or non-explosion, is, what do you, as ordinary men, understand occurred at that time in the light of all the testimony? Was it an explosion in the ordinary and popular sense of that word, or was it a fire with a subsequent explosion or a subsequent collapse of the building as a sequence to the fire?"

The plaintiff claimed there was some evidence that the collapse of the building was the result, not of explosion, but of rapid combustion of the gasoline vapor, which first expanded the atmosphere of the cellar, and then, through cooling, produced a vacuum that caused the crushing in of the floor by the unresisted pressure of the external atmosphere.

With reference to that contention the court charged:

"If the jury believe from the evidence that on the 28th day of September, 1896, the commodities of the plaintiff mentioned in the policy of insurance, offered in evidence, were destroyed

or injured or lost in the manner testified to by the plaintiff's witnesses, and if they further find from the evidence that such loss or damage was the result of fire not having its origin or commencement by or with an explosion of any sort, but by the accidental combustion of any non-explosive substance in the cellar of plaintiff's premises, described in said policy, and that in consequence of such combustion the front building erected on said premises was prostrated, and the loss or damage to the property insured was the immediate result thereof, then the loss was occasioned by fire within the meaning of the policy, and the plaintiff is entitled to recover in this action."

We think these two extracts from the charge of the judge fairly presented the question to the jury, and the exception to the charge is not available.

We find no error in the case, and the judgment of the Court of Appeals is

*Affirmed.*