EAGLE v. PETERSON.

Opinion delivered September 30, 1918.

1. INSANITY—CONCLUSIVENESS OF ADJUDICATION.—An adjudication of lunacy is not conclusive but *prima facie* evidence only, and a person who deals with the supposed insane person may show that at the time the contract was made he had sufficient mental capacity to make it.

2.  INSANITY—RATIFICATION OF CONVEYANCE.—An insane person, when restored to sanity, may ratify or confirm a conveyance made by him while insane.

3.  SAME—CONVEYANCE—RATIFICATION.—Delay by a grantor in a deed for two years before bringing a suit to disaffirm the conveyance is a circumstance to be considered in determining whether the grantor confirmed the deed.

Appeal from Lonoke Chancery Court; *J. E. Martineau,* Chancellor; affirmed.

*Williams & Holloway* and *Carmichael, Brooks & Rector,* for appellant.

1.   The deed was made by an insane person and was voidable.   23 Ark. 417; 34 *Id.* 626; 109 Ind. 315; 58 Am. Rep. 405; 53 Me. 451; 89 Am. Dec. 705; 97 Ark. 450; 45 *Id.* 392; 70 *Id.* 166; 36 Am. Rep. 218, 278; 184 S. W. 838; 27 Cyc. 1211; 97 Pa. St. 543; 19 L. R. A. 489; 36 *Id.* 732; 129 Ark. 88.

2.   It is not necessary to return the consideration. 23 Ark. 417; 53 Me. 451; 15 Wall. 9-28; 129 Ark. 88.   Here Peterson paid Eagle nothing.

3.   No renunciation further than bringing suit is necessary.   23 Ark. 417; 109 Ind. 315.

4.   The burden of proof is on plaintiff, but insanity may be shown by conduct, appearances, mental state, habits, physical condition and previous and subsequent insanity.   Insanity being once shown, the burden is on defendant to show that the deed was executed during a lucid interval. Enc. of Evidence, "Insanity," vol. 7, p. 459; 123 Ark. 134; *Ib.* 166; 36 L. R. A. 732; 21 U. S. (Law Ed.), 73; 2 Pom. Eq. Jur., § 947; 63 Tenn. 38; 59 Am. Dec. 499; 86 Ind. 195.   See also 2 Paige 422; 22 Am. Dec. 655; 8 N. Y. 388; 59 Am. Dec. 499; 22 *Id.* 657; 4 Mass. 147; 1 Elliott on Cont., § 368; 80 Mo. 474; 4 Elliott on Cont., § § 3397, 3821; 1 Devlin on Deeds, § 74.

After one is adjudged insane, his contracts are absolutely void.   Cases *supra;* 1 Elliott on Cont., § 377; 2 Van Vleet, Former Adjudication, § 515; 7 Enc. Ev. 457; 40 L. R. A. 250; 19 *Id.* 489

5. Innocent purchasers for value—that is, *bona fide* purchasers—are not protected. 55 Ala. 435; 142 *Id.* 560; 110 Am. St. 30 So. 12; 4 A. & E. Ann. Cas. 537; 102 Ga. 202; 29 S. E. 182; 40 L. R. A. 250; 53 Me. 451; 89 Am. Dec. 705; 191 N. Y. 452; 11 Ind. 433; 39 N. E. 521; 119 Ind. 567; 21 N. E. 749; 52 S. W. 222; 36 L. R. A. 732; 2 N. Y. Chy. (Law Ed.), 800; 66 N. W. 2; 22 Cyc. 1134, 1144-1145, 1198, 1200; 53 Mo. App. 667; 107 Ark. 314.

6. Appellant is not barred by laches. 103 Ark. 251.

*Charles A. Walls* and *W. A. Leach,* for appellees.

1. While in a few States there are decisions holding all contracts of an insane person absolutely void, the great weight of authority is that deeds of persons in fact insane, but not so adjudicated, are merely voidable and not void. 22 Cyc. 1171; 45 Ark. 392.

After adjudication of insanity, his contracts are not void but voidable merely. See 156 Mass. 277; 64 Minn. 201; 45 Tex. 409; 56 Kan. 187; 85 Ill. 62; 61 Kan. 625; 132 Pa. 134; 2 Page on Contracts, 1416-17; Elliott on Cont., § 370; 14 Pick. 280; Greenleaf on Ev., § 371; 22 Cyc. 1172; Buswell on Insanity, 397-8-9-400; 49 N. J. Eq. 192; 14 *Id.* 389; 34 *Id.* 150.

2. As to the effect of an adjudication of insanity upon the question of proof in a controversy between an insane person and third parties, see Elliott on Cont., § 375; 14 R. C. L., § § 73-4; 22 Cyc. 1134; 102 Wis. 61; Buswell on Insanity, § 190; 22 Cyc. 1115; 2 Harr. (Del.) 375; 21 Me. 461; 22 Wend. (N. Y.) 526; 48 N. C. 245; 62 Ill. 196; 3 Rand. (Va.) 399; 19 Ark. 545.

Before the continuance of insanity will be presumed it must first be established that the insanity is permanent and continuing. Here appellant has failed in his proof. The only proof offered as to the cause of insanity was the excessive use of liquors, etc., which does not bring him within the rule. 8 Vt. 638.

3. The fact that appellant was adjudged insane prior to the execution of the deed, does not render the deed void. The adjudication is conclusive only of in-

sanity at the time and appellant must show that it was permanent and continuing. Appellant was not insane on March 1, 1912, when the deed was executed. The evidence shows he was sane. 13 Cyc. 575; 59 Pa. St. 9; 25 Fed. 7; 94 N. W. 370; 15 Ark. 246; 60 *Id.* 606; 115 *Id.* 430; 70 *Id.* 166; 85 Mich. 198; 87 N. W. 81.

4. Eagle really afterwards ratified his deed. He waited too long to disaffirm. Innocent purchasers are affected and their rights should be protected.

HART, J. This is an appeal from a decree of the chancery court in the case of Victor Daughtry, as next friend of Linn C. Eagle, against G. M. Peterson, W. H. Young, J. V. Ferguson and W. C. Ferguson. The object of the suit was to annul a deed executed by Linn C. Eagle to G. M. Peterson in March, 1912, and subsequent deeds to the same property from Peterson to Young and deeds from Young to the Fergusons to a part of said property. Linn C. Eagle owned a large quantity of lands in Lonoke County, Arkansas, which he inherited from his father. On the first day of March, 1912, Linn C. Eagle conveyed 240 acres of these lands to G. M. Peterson. In June, 1912, Peterson conveyed the land to W. H. Young for a consideration of $925. Young subsequently conveyed a part of the lands to J. V. Ferguson and a part of them to W. C. Ferguson. The lands were wild and unimproved at the time of the conveyance by Eagle to Peterson. Since that time a county road has been laid out across them and they are within the boundaries of a drainage district which has greatly increased their value. Linn C. Eagle was about 32 years old at the time he executed the deed to Peterson, and had been since early manhood, a confirmed drunkard and addicted to the use of morphine. In July, 1908, Linn C. Eagle was adjudged insane by the probate court of Lonoke County, and a guardian of his estate was appointed. There being no room in the State Hospital for Nervous Diseases for him, the probate court ordered Eagle to be confined in a private hospital in the city of Little Rock. Eagle remained in this hospital

for something over two months when his brother procured his release from custody from the owner of the hospital. After his discharge from this private hospital, Eagle took charge of his own business affairs and has continued to have charge of them ever since. His guardian filed his final account current and was discharged in the year 1909.

Evidence was adduced by Eagle tending to show that he was insane from the excessive use of intoxicating liquors and morphine at the time he executed the deed to Peterson. On the other hand, evidence was adduced tending to show that he was mentally competent to transact business at that time. For the reasons given in the course of the opinion it will not be necessary to abstract this testimony in detail.

Peterson was in the employment of Eagle at the time the deed was executed to him. Soon after the execution of the deed by Eagle to Peterson, Eagle removed to the State of Oklahoma and remained there until some time in the fall of 1912, when he returned to his old home in Lonoke County. On his return, he found that Peterson had left there, and his whereabouts have since been unknown.

According to the testimony of Young, Peterson first asked him $1,500 for the land but he declined to give that much. They finally agreed on $925, which was about one-half of the real value of the land. During their negotiations Peterson wrote to the State of Oklahoma, where Eagle then resided, and got his affidavit to cure a defect in the title of the land. After Eagle returned, either in the fall of 1912, or in the spring of 1913, he went into the bank of which Young was cashier and asked to see the affidavit which he had made in regard to the title. Young showed the affidavit to Eagle and also showed him the deed which he had received to the land from Peterson. Eagle told Young that the sale of the land was all right, but that Peterson owed him some money, and that he was hunting for him to make him pay it. Young also testified that he had never heard that Eagle

claimed that fraud had been practiced on him with regard to the execution of the deed until after the suit was brought.

According to the testimony of Eagle, his mind was so deranged by the excessive use of whiskey and morphine at the time he executed the deed to Peterson in March, 1912, that he did not know what he was doing. He thought he was executing to Peterson an option deed, or was giving Peterson the power to sell the land for him. He never received any compensation from Peterson, and, according to his own testimony and that of other witnesses, it was well known that Peterson did not have any money at that time. It was shown by witnesses for the defendants that Peterson had some money at the time the transaction took place. Eagle testified that he signed the affidavit to cure a defect in the title, thinking it was necessary in order to enable Peterson to sell the land for him. He quit the use of morphine in August, 1912, and thereafter to a great extent, also quit the excessive use of whiskey. He returned to Arkansas in the fall of 1912 to see about his affairs. He testified that he had never done or said anything to ratify the sale of the land to Young, and that Young knew that Peterson had never had money enough to buy the land from him, and that Young told him that he knew Peterson had never in reality owned the land.

The record shows that in 1908 Linn C. Eagle resided in Lonoke County, and that he was adjudged insane by the probate court and ordered to be confined in a private hospital. He was released from the hospital in about two months, but there was never any order of the court that he had been restored to his right mind.

Under this state of the record, is it earnestly insisted by counsel for the plaintiff that an adjudication of insanity substitutes for the general presumption of sanity a presumption of insanity, and that contracts made by the insane person before he has been adjudged to be restored to reason are void and not merely voidable. Hence they contend that, under the facts of the present case, it

was incompetent to show that Eagle was capable of contracting at the time he executed the deed to Peterson. The authorities on this point are in conflict. In many of the States, by statute, the contracts of a person, who has been judicially declared insane and placed under guardianship, made before an order that such person has been restored to his right mind, are absolutely void.

There is no statute of this kind in this State. It is is a matter of common observation and experience that many persons who are insane at a particular period are subsequently restored to their right mind. Such cases are not unusual, and the return of reason may be anticipated when the cause for the insanity has been removed. We think the true rule to be that an adjudication of lunacy is not conclusive, but *prima facie* evidence only, and that a person who deals with the supposed insane person may show that at the time the contract was made he had sufficient mental capacity to make it. *Clark* v. *Trail,* 1 Metc. (Ky.) 35; *Parker* v. *Davis,* 53 N. C. 460; *Armstrong* v. *Short,* 8 N. C. 11; *Field* v. *Lucas,* (Ga.) 68 Am. Dec. 465, and 22 Cyc. 1134, and see *Small* v. *Champeny,* (Wis.) 78 N. W. 407, also *Miller* v. *Rutledge,* (Va.) 1 S. E. 202; *Elston* v. *Jasper,* 45 Tex. 409, and *Willworth* v. *Leonard,* (Mass.) 31 N. E. 299.

In the case of *Clark* v. *Trail, supra,* the court said: "An inquest of lunacy, or of unsoundness of mind, although conclusive evidence of the condition of the party at the date of the inquest, is only *prima facie* evidence of his condition at a subsequent period. Having been found a lunatic, the law presumes the state of his mind to continue unchanged until the contrary be made manifest. It is this presumption of the law that makes the inquest even *prima facie* evidence of his insanity at a subsequent time. Being a mere presumption, it may be repelled by oral testimony. There is no rule of evidence which requires another inquest to be found, in order that this presumption may be thereby rebutted."

This holding is in accordance with the principles of the common law. Mr. Justice Blackstone in his Commentaries states the doctrine as follows:

"Idiots and persons of non-sane memory, infants, and persons under duress, are not totally disabled either to convey or purchase but *sub modo* only, for their conveyances and purchases are voidable, but not actually void." Cooley's Blackstone, Vol. 1, p. 666.

Chancellor Kent says, "By the common law, a deed made by a person *non compos* is voidable only, and not void." Kent's Commentaries, 14 Ed. Vol. 2, *p. 451.

Having reached the conclusion that the inquisition is only *prima facie* evidence and that evidence contradictory is admissible, it remains for us to decide whether or not Eagle was mentally incompetent to contract at the time he executed the deed to Peterson in March, 1912, or, if so mentally incompetent at that time, did he, after his reason was restored, ratify and confirm the contract? Under the doctrine that conveyances of insane persons are voidable and not void, it is obvious that such instruments are subject to ratification as well as disaffirmance, and that the insane person may, when restored to sanity, ratify or confirm the conveyance which he made while insane. *George* v. *St. L., I. M. & S. Ry. Co.,* 34 Ark. 613; 14 R. C. L. 595 and 22 Cyc. 1209.

The testimony on the question of the mental capacity of Eagle to execute the deed to Peterson in March, 1912, is very voluminous and is in direct and irreconcilable conflict. We have not set out the testimony on this point and do not deem it necessary to do so; for, if it be assumed that Eagle was mentally incompetent when he executed the deed to Peterson to the property in question, it is quite clear from the record that he ratified his act after he became sane. That Eagle was restored to his right mind in the fall of 1912 is abundantly shown by the record. It is shown by both the testimony of Young and of Eagle himself. Their testimony only conflicts on the question of the ratification of the deed. Eagle testified that he quit using morphine in August, 1912,

and also, to a great extent, the use of intoxicating liquors. According to his own testimony he returned to Arkansas that fall, and Young admitted to him that he knew Peterson did not have any money with which to purchase the land and that the title in reality was in Eagle. Young flatly denies this, and on the other hand states that he showed to Eagle the deed of Eagle to Peterson as well as the affidavit of Eagle made to cure a defect in the title, and that Eagle acknowledged the same and ratified his contract with regard thereto. The testimony of Young is corroborated by the circumstances of the case. The conversation between Young and Eagle with reference to the execution of the deed from Eagle to Peterson was had in the fall of 1912, or in the early part of the year 1913. The present action was not instituted by Eagle until the 27th day of February, 1915, and no reasonable excuse is given by him for the delay. The delay in bringing the suit is a circumstance to be considered in determining whether or not Eagle confirmed the execution of the deed made at the time when he at least thought himself to be mentally incompetent to execute the same. Another circumstance is that Eagle first had the suit brought in his own name, and it was afterwards changed to a suit by next friend because there had been no adjudication restoring him to sanity.

The court made a general finding for the defendants and dismissed the complaint of the plaintiff for want of equity. This included a finding that Eagle had ratified and confirmed the deed executed by him to Peterson in March, 1912. This finding is sustained by a preponderance of the evidence, and it follows that the decree must be affirmed.