## HALL v. ÆTNA LIFE INS. CO.
### No. 10420.

Circuit Court of Appeals, Eighth Circuit.
Aug. 12, 1936.

448

S. Lasker Ehrman, of Little Rock, Ark. (Grover T. Owens, of Little Rock, Ark., on the brief), for appellee.

Before GARDNER and SANBORN, Circuit Judges, and NORDBYE, District Judge.

SANBORN, Circuit Judge.

Kanady M. Hall, fifty-four years of age, a resident of Little Rock, Ark., and the insured under a $5,000 life policy issued by the Ætna Life Insurance Company, which policy contained a provision for monthly benefits in case of total and permanent disability, and a provision for double indemnity in case of accidental death, died on March 26, 1934. While intoxicated, he was a visitor at a lumber mill. A young man named Parker, who was employed there, in fun suggested throwing a pail of water on Hall to sober him up. He picked Hall up and laid him on a table. Hall got off the table and threw water from a pail at Parker. Hall drew a pocketknife with a blade about 2½ inches long and rushed at Parker, who ran, but slipped and fell. Hall then stabbed him in the back. Parker got up and ran outside to escape from Hall, and then attempted to get the driver of an approaching automobile to take him to the hospital to have his wound dressed. Hall followed him. The owner of the mill, who appeared on the scene, told Hall to put away his knife. Hall put it away for a moment, but, as he again approached Parker, he drew it out and attempted to attack Parker, who, in self-defense, struck Hall in the jaw. Hall fell, hit his head upon a rock, fractured his skull, and shortly thereafter died. That Hall brought about the altercation which ended with his death is undisputed. Parker, a much younger and stronger man, tried to avoid injuring Hall, realizing that Hall was irresponsible from drink.

Mrs. Hall, the appellant, who was the beneficiary named in the policy, claimed double indemnity on the ground that the insured's death was accidental. The company paid her the face of the policy, but denied liability for double indemnity. She then brought this action at law to recover an additional $5,000, asserting that the insured's death was accidental. The company in its answer alleged that the insured died as the result of injuries sustained in an altercation in which he was the aggressor. In her reply Mrs. Hall denied that the insured was the aggressor, but alleged that on March 26, 1934, and long prior there-

J. A. Tellier, of Little Rock, Ark., for appellant.

to, the insured was of unsound mind "and incapable of understanding the consequences and effect of his own acts." The case was tried to a jury, which returned a verdict for the defendant insurance company, and from the judgment entered thereon this appeal is taken.

Mrs. Hall (who will be referred to as plaintiff) challenges certain rulings upon evidence and the refusal of the court to give instructions to the jury requested by her.

The evidence as to how the death occurred was undisputed. The issue of fact was a simple one—whether the insured was insane at the time he attacked Parker.

To establish the insanity of the insured, the plaintiff introduced a certified copy of an order of the probate court of Pulaski county, Ark., dated February 1, 1934, adjudging the insured to be "a person of unsound mind and mentally incompetent," and appointing plaintiff his guardian. There was evidence tending to show that the adjudication was procured to enable Mrs. Hall to obtain the monthly payments being made to the insured under his policy of insurance because of total and permanent disability and to establish a basis for setting aside a contract which the insured had made with a lawyer, by the terms of which the lawyer was to receive one-half of such disability payments in consideration of services in establishing the total and permanent disability of the insured under the policy. The evidence indicated that the insured had at one time been a successful lumberman, but that intoxicating liquor had virtually destroyed him both physically and financially. He was frequently intoxicated, squandered his money in drinking and gambling, and neglected his wife and family. There was testimony tending to prove that the insured's mental condition was such during the period shortly prior to his death that he did not understand the consequences of his acts. One medical expert expressed the opinion that he was in that condition at the time of the altercation, saying: "If this individual had been a child we would say he didn't know what it was all about, didn't know any better because he didn't know the effects of his acts. He didn't know what it was all about. This man's condition was very similar, he didn't know what it was all about." There was testimony, on the other hand, that when sober the insured was sane and would know that it was wrong to stab a man in the back. The test of insanity which plaintiff adopted throughout the trial in the examination of witnesses was failure to understand consequences, while that used by the defendant was failure to understand the difference between right and wrong. Up to the close of the testimony, no dispute had arisen between the parties as to the proper test of insanity.

Plaintiff made nine requests for instructions. The requests for instructions in so far as they are of importance on this appeal were in words or substance as follows:

(1) That "the sole issue to be determined is whether or not the reasoning faculties of the said Kanady M. Hall were so impaired on the date he became engaged in said affray that he was unable to understand or comprehend the moral character, the general nature, consequences and effects of the act he was about to commit."

(2) That, "when the reasoning faculties of an insured are so far impaired that he is unable to understand the moral character, the general nature, consequences and effect of the act he is about to commit, or when he is impelled thereto by an insane impulse, which he has not the power to resist, he is incapable of becoming the aggressor in an affray."

(3-5) That, if the insured's insanity was caused by drinking of liquor over a long period of time, the verdict should be for her, and that such insanity would have the same effect as insanity from any other cause.

(6) That the adjudication of the insured as an insane or an incompetent person was prima facie evidence of insanity, and that, after proof of such adjudication, the burden of proof was upon the insurance company to show that the insured was of sound mind at the time of his death.

(7) That the term "accidental" is used in the policy in its ordinary sense, in which sense it means happening by chance, unexpectedly taking place, not according to the usual course of things.

(8) That, if the insured "was of unsound mind and not responsible for his acts, then he did not voluntarily commit an assault upon J. E. Parker, or become the aggressor in the affray, not being responsible for the consequences of his acts, his death was caused by accidental means within the meaning of the policy."

(9) That, if the death of the insured was due to an affray with Parker in which the assured "was the aggressor, but at a time when the reasoning faculties of said

Hall were so far impaired that he was not able to understand the moral character, general nature or consequence or effect of the act he was about to commit, or that he was impelled thereto by an insane impulse which he had not the power to resist, such act of aggression was an involuntary act of the said Kanady M. Hall and your verdict will be for the plaintiff."

The court, before delivering the charge to the jury, refused to give any of these instructions, and plaintiff then took an exception to the court's refusal of each request.

The court charged the jury that plaintiff claimed that the insured was insane at the time he started the fight which ended in his death, and could not know the result of what he was doing; that the defendant claimed that the insured was sane, but intoxicated; that, if the insured was insane, although drunk, the plaintiff could recover, but that, if he was sane and drunk, she could not; that, if the insured when sober knew the difference between right and wrong, he was sane; but, if he did not, he was insane. The court also charged as follows: "If the insured, Hall, at the time or prior to the time he entered into this fight was insane, did not know the difference between right and wrong, did not know that he might reasonably expect a man to fight back if he made an attack upon him, and would not have known that had he not drunk anything at the time, then the plaintiff can recover although Hall did take a drink."

The court also charged: "Insanity is such a condition of mind as renders a person incapable of knowing right from wrong"; that it would make no difference what brought about the insanity; that the issue to be determined was, "Did Hall at the time * * * that he engaged in this fight, have such a mentality as would enable him to know the difference between right and wrong had he not had whisky in him?"

On the burden of proof, the court charged as follows: "The burden of proof rests upon the plaintiff. The plaintiff must show by a preponderance of the testimony that Hall was insane and not drunk at the time that the difficulty occurred which resulted in his death. If the testimony is evenly divided as to whether he was insane or as to whether he was drunk, then the plaintiff must lose because the burden rests upon her to show he was insane."

At the close of his charge the court said: "The requested instructions upon both sides, so far as they are in conflict with the instructions given by the court, are denied." Plaintiff's counsel then said: "We have no further exceptions to save to the Court's charge."

The plaintiff contends that her exceptions to the court's refusal or failure to give her requested instructions were sufficient. That we very much doubt. It is not error for a trial judge to refuse proper requests for instructions in advance of his charge when in his charge he includes the substance of such requested instructions in his own language and his charge, when taken as a whole, is accurate, fair, and adequate. Where a trial court in his charge to the jury has obviously attempted to cover the full subject-matter of instructions requested by the parties, we think that, at the close of the charge, it becomes the duty of counsel to point out to the court, by specific exceptions, wherein the court has failed to include instructions requested which it is claimed have not been covered. It is apparent in this case that the court could not have given all of the instructions requested by the plaintiff without making his charge unintelligible and confusing to the jury.

The general rule is that alleged error in instructing a jury, either in the giving of erroneous instructions or refusing to give requested instructions, will not be reviewed in the absence of specific exceptions pointing out wherein the instructions given are erroneous. McDermott v. Severe, 202 U.S. 600, 610, 26 S.Ct. 709, 50 L.Ed. 1162; Norfolk & Western Ry. Co. v. Earnest, 229 U.S. 114, 120, 33 S.Ct. 654, 57 L.Ed. 1096; United States v. U. S. Fidelity & Guaranty Co., 236 U.S. 512, 529, 35 S.Ct. 298, 59 L.Ed. 696; Jacobs v. Southern R. Co., 241 U.S. 229, 236, 36 S.Ct. 588, 60 L.Ed. 970; Guerini Stone Co. v. P. J. Carlin Const. Co., 248 U.S. 334, 348, 39 S.Ct. 102, 63 L.Ed. 275; Pennsylvania R. Co. v. Minds, 250 U.S. 368, 375, 39 S.Ct. 531, 63 L.Ed. 1039; Burns v. United States, 274 U.S. 328, 336, 47 S.Ct. 650, 71 L.Ed. 1077; United States v. Atkinson, 297 U.S. 157, 56 S.Ct. 391, 80 L.Ed. 555.

"Parties may not rest content with the procedure of a trial, saving general exceptions to be made the basis of error proceedings, when they might have had all they were entitled to by the action of the trial court had its attention been seasonably called to

the matter." Pennsylvania R. Co. v. Minds, supra, 250 U.S. 368, 375, 39 S.Ct.· 531, 533, 63 L.Ed. 1039.

The proper time to take exceptions to the instructions of the court and to its failure to give requested instructions is at the termination of the charge and before the jury retires; and· the exceptions taken should point out wherein the charge is erroneous or deficient and what requested instructions or portions thereof have not, either in words or in substance, been covered by the charge as given. This is only fair to the court and to opposing counsel. See Detroit Edison Co. v. Stricker et al. (C.C.A. 6) 65 F.(2d) 126, 127; Beaver v. Taylor et al., 93 U.S. 46, 55, 23 L.Ed. 797. The test should be whether, as a practical matter, the procedure followed called to the court's attention the specific omissions in the charge which are assigned as error. In this case we think it did not.

We have, however, examined the alleged errors of the court in refusing requested instructions, and we think that none of them would require a reversal.

The court's statement as to the burden of proof of insanity was correct. The burden was upon the plaintiff from the beginning. At the end of the trial, the question was whether a preponderance of all the evidence established the insanity of the insured. The adjudication of insanity was only prima facie evidence thereof. Cook et al. v. Jeffett et al., 169 Ark. 62, 272 S.W. 873, 875; Eagle v. Peterson et al., 136 Ark. 72, 206 S.W. 55, 57, 7 A.L.R. 553; Barkheimer v. Lockhart et al., 139 Ark. 223, 213 S.W. 381, 382; Feild et al. v. Koonce et al., 178 Ark. 862, 12 S.W.(2d) 772, 774, 68 A.L.R. 1303. It did nothing more than create a rebuttable presumption requiring production of countervailing evidence by defendant. It did not change the burden of proof. Howells State Bank v. Novotny et al. (C.C.A. 8) 69 F.(2d) 32, 34; Kohlsaat et al. v. Parkersburg & Marietta Sand Co. (C.C.A. 4) 266 F. 283, 284, 285, 11 A.L.R. 686.

Plaintiff's requested instruction as to the adjudication of insanity being prima facie evidence and that it shifted the burden of proof upon the defendant, it was not error to refuse.

The instruction of the court defining insanity was not entirely accurate nor complete; but, taking the charge as a whole, we think the jury were sufficiently instructed upon that subject to enable them to determine correctly the one issue of fact in the case. To know the difference between right and wrong is to know the moral character of an act and its general nature and, to some extent at least, its consequences and effect. The court's instruction that, if the insured "did not know the difference between right and wrong, did not know that he might reasonably expect a man to fight back if he made an attack upon him, and would not have known that had he not drunk anything at the time, then the plaintiff can recover although Hall did take a drink," we regard as the substantial equivalent, so far as this case is concerned, of an instruction advising the jury that, if the insured's reasoning faculties were so impaired that he was unable to understand the moral character, general nature, consequences, and effect of the act he was about to commit, the plaintiff should have a verdict.

The only thing clearly omitted from the charge was reference to "insane impulse," but in her pleading and in her examination of her witnesses the plaintiff, to prove insanity, relied upon the lack of understanding by the insured of the effect and consequences of his acts, and no suggestion of insane impulse appeared during the trial until the requests to charge were presented. The court should have defined insanity as the Supreme Court of the United States has defined it in Mutual Life Ins. Co. v. Terry, 15 Wall. 580, 591, 21 L.Ed. 236, which was the basis for plaintiff's requests in that regard. The court evidently relied upon section 2300 of Crawford & Moses' Digest of the Statutes of Arkansas, 1921, which reads as follows: "A person shall be considered of sound mind who is neither an idiot or a lunatic, or affected with insanity, and hath arrived at the age of fourteen years, or before that age, if such person know the distinction between good and evil." Since there was in the record an insufficient basis for an instruction on "insane impulse," we think it was not reversible error to omit it. Mitchell v. Potomac Ins. Co., 183 U.S. 42, 48, 49, 22 S.Ct. 22, 46 L.Ed. 74; Lynch et al. v. United States (C.C.A. 5) 73 F.(2d) 316.

There was no occasion for the court to give to the jury a definition of the word "accidental." If the insured was sane, his death was no accident. See McCrary v. New York Life Ins. Co. (C.C.A. 8) 84 F. (2d) 790, opinion filed July 10, 1936. If he was insane, his death was accidental. There was no controversy about that upon the trial,

452

and the jury were fully advised in that regard.

██ There is no merit in the plaintiff's challenge to the rulings upon evidence. The insured's son was not permitted to testify to things of which he had no personal knowledge. That was proper. McAdams v. United States (C.C.A. 8) 74 F.(2d) 37, 41, 42; Wigmore on Evidence (2d Ed.) § 657 (a).

██ The testimony of Mr. Hilliard as to the conduct of the insured at the time the insured made application for disability benefits was clearly admissible.

██ The hearsay testimony of Mr. Martin that Mr. House, an attorney, had told him that, after going through Martin's files, he (House) had no desire to bring suit against Martin to set aside the contract between Martin and the assured whereby Martin became entitled to one-half of the disability benefits paid by the Insurance Company to Hall, was inadmissible. The court did not rule on plaintiff's motion to strike this testimony, and no exception was taken. There is therefore no ruling of the court to be reviewed. Lahman et al. v. Burnes Nat. Bank (C.C.A. 8) 20 F.(2d) 897; Central Trust Co. v. Fidelity Trust Co. et al. (C.C.A. 8) 282 F. 233.

██ One of the defendant's experts was asked, on direct examination, whether certain doctors who had examined the insured in connection with his claim for total and permanent disability would have recognized the insured's mental incompetence had he been "insane to the point that he could not distinguish right from wrong." On redirect examination, the same expert was again asked whether, if the insured had all the symptoms which plaintiff's counsel had referred to, the physicians who examined the insured would have discovered it. The questions were objected to on the ground that the witness was being asked to "evaluate" the other doctors. This objection was overruled, and the questions were answered in the affirmative. The purpose of the questions was to ascertain from a specialist whether the symptoms of insanity, if it existed, would be sufficiently pronounced to be noticed by an examining physician who was not a specialist. The questions may have been objectionable in form, but it was not error to overrule the objection that the witness was being asked to "evaluate" other doctors.

██ The plaintiff makes a contention in this court not presented to the court below, namely: That the death was accidental because the insured started a fight which he had no reason to expect would result in serious injury to him, since the knife he used was only a small knife and the fight he started was not a deadly fight. Whether the kind of a fight which an insured starts has any relation to the question whether his resulting death is accidental or otherwise is not before us, not having been presented to the court below. Trapp v. Metropolitan Life Ins. Co. (C.C.A. 8) 70 F.(2d) 976, 981; Virtue v. Creamery Package Mfg. Co. et al., 227 U.S. 8, 38, 39, 33 S.Ct. 202, 57 L.Ed. 393; Hecht v. Alfaro (C.C.A. 9) 10 F.(2d) 464, 466; Bort v. E. H. McCutchen & Co. et al. (C.C.A. 8) 187 F. 798, 799; Weinstein v. Laughlin et al. (C.C.A. 8) 21 F.(2d) 740, 742; Wolfberg v. State Mut. Life Assur. Co. (C.C.A. 8) 36 F.(2d) 171, 175.

We think the plaintiff had a fair trial. The issue presented was simple and understandable. The jurors heard the evidence, and obviously concluded that the insured was sane but intoxicated at the time he engaged in the affray which ended with his death. It was not a case requiring the most careful and accurate instructions to secure a proper result, but one which twelve sensible persons could decide almost without instructions. Insanity and intoxication are met with in the everyday walks of life.

The judgment is affirmed.