CRITCHFIELD *v.* EASTERDAY.

EQUITY; DEEDS; MENTAL CAPACITY; UNDUE INFLUENCE; HUSBAND AND WIFE; INSANITY; EVIDENCE.

1. It would seem that where a husband caused his wife to execute a deed of trust upon her property, in which he joined, knowing her to be mentally incompetent to execute it, equity will not, if the deed of trust cannot properly be set aside, charge the payment of the deed-of-trust indebtedness upon other property acquired by the husband from his wife under her will, where it appears that the money secured by the deed of trust was borrowed, at least in part, for her benefit, and for the release of her property from a tax-lien assessment.

2. In a suit to set aside deeds of real estate on the ground of the mental incapacity of the grantor, the testimony of unimpeached witnesses, who were present, and who say that the deeds were executed by the grantor knowingly and with a complete understanding of their effect, will outweigh the testimony of a greater number of witnesses who

testify generally to the defective memory of the grantor, but do not show actual insanity.

3. Even an insane person may have lucid intervals, and his contracts then made are valid and binding; and much more may one who is affected by a progressive disease, such as softening of the brain, have periods of complete comprehension and understanding of transactions,—especially when such transactions are not of a complicated character.

4. Where the devisees of a wife seek to set aside a deed of real estate made by her to her husband, on the ground of her mental incapacity and the exercise by him of undue influence, testimony tending to show that she was in such an infirm mental condition as to be dependent upon her husband and subject to his superior will, which would be sufficient to invalidate the transactions were the circumstances surrounding it inequitable, or if they showed any undue advantage taken of her by her husband, will be insufficient to have that effect where it appears that the property was all bought with the money of the husband, and that, after its transfer to him, he made a will giving her the absolute use of it for life.

No. 1539.   Submitted May 24, 1905.   Decided June 13, 1905.

HEARING on an appeal by the complainants from a decree of the Supreme Court of the District of Columbia dismissing a bill in equity in a suit to vacate certain deeds of real estate.

*Affirmed.*

The COURT in the opinion stated the facts as follows:

This is a proceeding in equity to vacate two deeds, one a deed of trust by way of mortgage, and the other a deed of conveyance in fee simple, on the ground of alleged mental incapacity on the part of the principal grantor in the two deeds.

Doctor Thomas B. Campbell and his wife, Ellen J. Campbell, who seem to have come from the State of Ohio, were residents of the city of Washington for several years, and had reached an advanced age at the time when the transactions were had which constitute the subject-matter of this litigation. They had no children born of their marriage, but Doctor Campbell had a grandson, the appellee, Vernon L. Lawlor, a youth of the age of about seventeen years, when the bill of complaint in this case

was filed on August 18, 1902, and who was the son of a daughter by a previous marriage and resided in the State of Illinois. An inmate also of the family to some extent was the appellee, William Benton Campbell, who was the son of a first cousin of Dr. Campbell, and apparently his nearest relative after young Vernon Lawlor. Mrs. Ellen J. Campbell had two brothers, who are the appellants, Charles W. Critchfield and Wilson Critchfield, and this proceeding is a controversy over certain real estate in the District of Columbia between the relatives of Dr. Campbell and the relatives of Mrs. Campbell, both Dr. Campbell and Mrs. Campbell being now dead.

On November 1, 1901, two parcels of land in Le Droit Park, a suburb, and now practically an annex of the city of Washington, one designated as lot No. 5, which was improved by a dwelling house and was the place of residence of Dr. and Mrs. Campbell, and the other designated as lots Nos. 43 to 48, both included, which was unimproved, stood in the name of Ellen J. Campbell. The first parcel was of the value of about $8,000, but was encumbered by a mortgage for $4,500. The second parcel was unencumbered, except by some special assessments levied against it by the District of Columbia, and was of the value of about $9,000. For the purpose, it appears, of paying these special assessments, and also, as it would seem, to procure means for the support of the family, Dr. and Mrs. Campbell on the day last mentioned procured a loan of $3,000 from the appellee, Mrs. Sarah E. R. Queen, and, to secure its repayment with interest at the rate of 5 per centum per annum, executed a deed of trust by way of mortgage on the second parcel of land which has been mentioned, to the appellees, George J. Easterday and George Y. Worthington, as trustees; and this deed was duly recorded. The loan was for three years, and is now overdue.

Subsequently, on February 21, 1902, for the purpose of having the title to both pieces of property in the name of Dr. Thomas B. Campbell, the husband and wife united in a deed of conveyance of both to the appellee, William Benton Campbell, subject to the two deeds of trust thereon, and immediately on the same day William Benton Campbell conveyed them to Dr.

Thomas B. Campbell. The consideration for both deeds was only nominal, but the testimony indicates that the money for the original purchase of both pieces came from Dr. Campbell.

Three days afterwards, on February 24, 1902, Dr. Campbell executed his will, and devised his entire estate to the appellee, George J. Easterday, in trust for his wife, Ellen J. Campbell, for life, with discretion to the trustee to sell or mortgage for her benefit at any time as might be expedient, and, upon her death, to divide the estate equally, or whatever should then remain of it, between the appellees, Vernon Lawlor and William Benton Campbell, subject to a legacy of $1,000 to an old and faithful servitor. He died a week afterwards, on March 3, 1902, and in due time the will was admitted to probate in the probate branch of the supreme court of the District; and the appellee, George J. Easterday, entered upon his duties as executor and trustee thereunder.

Very soon after Dr. Campbell's death Mrs. Campbell returned to Ohio, or rather was taken there, and resided with her relatives in the city of Columbus, where she died on May 19, 1902, having survived her husband only two months and a half. She left a will executed on June 11, 1900, whereby she devised the first parcel of land hereinbefore mentioned and one undivided half of the second parcel to her husband, Dr. Thomas B. Campbell, and the other undivided half of the second parcel to be equally divided between her two brothers, the appellants; and she named the appellant, Charles W. Critchfield, as her executor. This will implies some degree of hostility to her husband at the time, for it provides that, if he should make and enforce any claim to any other property of hers, the amount of such claim realized by him should be a charge upon the property devised. This will, also, was duly admitted to probate in the supreme court of the District of Columbia, and the executor became duly qualified.

In a short time thereafter, on August 18, 1902, the present proceedings were commenced by the parties interested under the will of Mrs. Campbell by the filing of a bill in equity against the persons interested under the will of Dr. Campbell. The sub-

:stantial allegation of this bill is that, at the time of the execution by Dr. and Mrs. Campbell of the various deeds that have been mentioned, Mrs. Campbell was not of sound mind, and was incapable of making a valid deed or contract, and that the deeds in question were procured by undue influence on the part of Dr. Campbell. And the prayer of the bill is for their cancelation. The answers in positive terms denied both the mental incapacity of Mrs. Campbell and the alleged undue influence of Dr. Campbell. Considerable testimony was taken. Twenty-three witnesses were examined on the part of the complainants, and testified to acts of mental unsoundness. Nine witnesses on behalf of the defendants controverted this testimony. At the hearing the court held that the complainants had failed to establish their case, and dismissed the bill, and from the decree of dismissal the complainants appealed.

*Mr. O. W. Aldrich* and *Mr. M. Strasburger* for the appellants.

*Messrs. Gordon & Gordon, Mr. H. S. Matthews,* and *Messrs. Brandenburg & Brandenburg* for the appellees.

Mr. Justice MORRIS delivered the opinion of the Court:

1. The appellants have abandoned in this court their contention against Sarah E. R. Queen and against Easterday and Worthington, the trustees in the deed made to secure the indebtedness due to her. There is absolutely no case whatever made out against her right; and, as to her and her two trustees, beyond all question the bill was properly dismissed. The appellants are without the shadow of right to disturb her security.

2. As between the appellants and the other appellees, there is no question of law involved. The parties are agreed upon the law. In their brief the appellants say as follows: The only controverted question of law involved in the case is based upon the alternative prayer in the bill, which asks that, if the court should find that the deed of trust cannot be set aside, it shall be

paid from the part of the property devised to Dr. Thomas B. Campbell. We claim that, under the general principles of equity, if it appears from the evidence that Mrs. Campbell was, not competent to do business when the deed was made, and that this fact was known to her husband when he caused her to exe-- cute the instrument, upon him shall fall the burden, and that, as he died before the death of his wife, it shall fall upon those who represent him as heirs at law.

While we think that this contention as to the law applicable to this case is not sound, even in the contingency that Mrs. Campbell was not competent to execute the deed of trust at the time at which she did execute it, since the money was borrowed, at least in part, for her benefit and for the release of her property from the lien of assessment, yet, even if it were admitted to be a correct exposition of the law, we regard it as of no consequence in this case. For we are of opinion that it is not shown by the testimony that at the time of the execution of these deeds Mrs. Campbell was without the mental capacity required for their due execution.

The question is merely one of fact; and, concurring, as we fully do, in the conclusion deduced from the testimony by the learned justice who heard the cause in the court below, we do not see that any good purpose whatever would be subserved by any new analysis of that testimony by us. We will content ourselves with quoting and adopting as our own two paragraphs from the opinion of that justice to be found in the record, wherein he admirably sums up his conclusion. He says: "But I am not satisfied of her [Mrs. Campbell's] mental incapacity to execute either the deed of trust or the subsequent deed in fee. It is true a larger number of witnesses have testified generally to her defective memory during the period covering these instruments than have testified that she was mentally sound. But in my mind this mass of general testimony, not showing, as frankly admitted by counsel for plaintiffs, actual insanity, is not conclusive as to her incapacity to execute valid deeds at the identical times when unimpeached witnesses who were personally present say she did execute such deeds knowingly and with a complete

understanding of their purpose and effect. Even an insane person may have lucid intervals, and his contracts then made are valid and binding. Much more may one who is affected by a progressive disease such as softening of the brain have periods of complete comprehension and understanding of transactions, especially when not more complicated than those involved in this case.

"It is contended, however, that, although not insane, Mrs. Campbell was in such an infirm mental condition as to be dependent upon her husband, and subject to his superior will. This would appeal to me so far as the transaction of February 21 is concerned, were the circumstances surrounding it inequitable, or did they show any undue advantage taken of her by her husband. But I am not so impressed. Here were two old, infirm, childless persons, on the verge of the grave, attempting to arrange their meager property so that each should have support and maintenance during the short remaining space of their allotted days. By the testimony, the property had been bought by the husband and the titles placed in the wife. She makes a deed conveying all to him and he makes a will giving her, through a trustee, the absolute right to use it all for her support and maintenance during her life. I cannot see in this transaction any undue advantage taken of her."

We do not think that we need add anything to this. We think that it states the case fully and accurately.

The decree appealed from must be affirmed with costs. And it is so ordered.                          *Affirmed.*