## Hale et al. v. Hale.

(Decided May 10, 1932.)

EDWARD P. HILL, Jr., for appellants.

HOBSON & JAMES and J. B. CLARKE for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Reversing.

This appeal is from a judgment of the Floyd circuit court in which a mortgage given by Daisy Hale and her husband, Henry Hale, to Josie Hale to secure a payment of a note for $1,600, was canceled, set aside, and held for naught.

In the petition which joined Josie Hale and her husband, Ben Hale, as defendants, it is alleged that on April 12, 1928, when the mortgage was signed, plaintiff's husband, Henry Hale, was insane and of such unsound mind that he was incapable of transacting business or acknowledging an instrument of any kind or of comprehending or understanding the effect of the instrument thus signed and acknowledged. She further alleged that the mortgage was executed to secure a loan of $1,600 to her husband, and that at the time she signed and acknowledged same she was under duress and fear of threats and violence made against her by her husband, but for which she would not have signed and acknowledged the instrument; that both defendants at the time knew of the mental condition of Henry Hale and of the fear and duress under which she was laboring; that she received no part or consideration for the mortgage; that, because of the duress under which she was laboring and the mental condition of her husband, the mortgage was void.

The answer as amended, in addition to making a general denial of the allegations of the petition, affirmatively alleged that Daisy Hale on numerous occasions solicited them to make the loan and indicated her willingness to execute the mortgage to secure same; that she had never at any time expressed or indicated an unwillingness to give the mortgage or that she was laboring under any duress or fear; that the money, the payment of which the mortgage secured, or a portion

thereof was used to discharge obligations of Daisy Hale and Henry Hale; that by her silence as to her alleged duress and fear, and as to the mental condition of her husband both before and after the execution of the mortgage and until the action was instituted, she was estopped to assert or maintain her alleged cause of action against defendants. The affirmative allegations of the answer as amended were controverted by reply, thus completing the issues.

Appellee and her son testified as to acts and conduct of her husband toward her for some days prior to the execution of the mortgage, and friends who stayed at their home the night before the transaction took place also testified concerning this. Their evidence indicates that appellee protested against giving the mortgage, and pleaded with her husband not to require her to do so; that he continually coerced, menaced, and threatened her, even to the extent of saying that he would kill her if she refused to comply with his wishes. She stated that on her way to the home of appellants, where the mortgage was executed, she continued her protests, and was crying and pleading with her husband in the presence of the deputy clerk who took their acknowledgment to the mortgage. According to the evidence of Mrs. Hale and those who were in their home the night previous to the execution of the mortgage, Henry Hale had worked himself into a state of high nervous tension and they gave as their opinion that he was crazy. The only evidence tending to indicate in any way that Josie Hale or her husband knew of or suspected the alleged duress under which appellee was laboring was her statement that she told Ben Hale that she did not want her husband to get the money. Her reason, as she testified, for not disclosing the true state of affairs to appellants, was that she was under fear that her husband would kill her, and also that she had no opportunity to tell them privately, as her husband would not allow her to be out of his presence.

Appellants testified that they knew nothing of the alleged threats of Henry Hale against his wife or of the duress or fear under which she claimed to be laboring; that at the time the mortgage was written and executed she appeared in good spirits and was laughing and engaged in conversation with others. In this, they were corroborated in a measure by the officer who took the acknowledgment. He testified that he did not recall

seeing appellee crying or hearing her protest against signing the mortgage either while on the way to or at the home of Ben Hale. There was also some evidence that, prior to the execution of the mortgage, Daisy Hale was soliciting others to make a loan to her husband.

On the question of Henry Hale's mental condition, it appears that about four years prior to the time of the execution of the mortgage he was adjudged to be of unsound mind and was committed to the Eastern Insane Asylum at Lexington, where he remained for several months. After his release from the asylum, he was actively engaged in business, and at the time of the transaction in question he and his wife were conducting a store and keeping the post office at Blue River. Ed Hill, former county judge of Floyd county, testified that on June 25, at an inquest held to determine the mental condition of Henry Hale, the jury returned a verdict finding him sane and able to transact business. He stated that, some time prior to the inquest, Henry Hale approached him and stated that some bankers had suggested that such inquest be held, that during the time he appeared to be of sound mind and that he (Hill) indorsed a note for him. He further testified that in the fall of 1928 another inquest was held, and Henry Hale was found to be insane and was again committed to the asylum, where he has since remained.

The land covered by the mortgage formerly was owned jointly by Daisy Hale and her husband, but on August 2, 1928, and after his release from the asylum, Henry Hale conveyed to his wife his interest therein.

Appellants testified that they conduct a small store near their home, and that for some months prior to the execution of the mortgage Henry Hale bought poultry, eggs, and other produce from them, and that he seemed capable of transacting business and was accurate in making calculations. They further testified that on the day the mortgage was executed they saw nothing unusual about his conduct, and there was nothing to indicate that he did not know or understand what he was doing. The officer who took the acknowledgment also testified that he saw nothing unusual about the acts or conduct of Henry Hale on that occasion. Two or three witnesses who were present testified that Henry Hale assisted in the preparation of the mortgage.

The general rule is that a deed or mortgage ex-

ecuted by a husband and wife may not be avoided on the ground that the signature and acknowledgment of the wife was procured by force or duress practiced by the husband, in the absence of a showing that the grantees or mortgagees participated or connived in the force or duress or had knowledge thereof. J. M. Robinson, Norton & Co. v. Randall, 147 Ky. 45, 143 S. W. 769; Ely v. Hartford Life Ins. Co., 128 Ky. 799, 110 S. W. 265; Fightmaster v. Levi, 17 S. W. 195, 13 Ky. Law Rep. 412; Fears v. United Loan & Deposit Bank, 172 Ky. 255, 189 S. W. 226; Smith v. Commercial Bank, 77 Fla. 163, 81 So. 154, 4 A. L. R. 862, and cases in annotation.

There is no showing that appellants or either of them practiced any compulsion or duress upon Daisy Hale or that they participated or connived in or had any knowledge of the alleged duress exerted upon her by her husband.

It is argued with great earnestness that the mortgage is void because the husband, by reason of mental incapacity, was incapable of joining with his wife therein or of knowing the effect of the instrument. In the case of Rath's Committee v. Smith, 180 Ky. 326, 202 S. W. 501, it is pointed out that the person asserting and relying upon mental incapacity to avoid a contract has the burden of showing it, and that judgment of inquest as to mental condition of a person is conclusive only for the time being, and may at any subsequent time be rebutted. See, also, Turpin's Adm'r v. Stringer, 228 Ky. 32, 14 S. W. (2d) 189.

While there is evidence that, at an inquest held about four years prior to the execution of the mortgage, Henry Hale was adjudged to be insane, it is further shown that many months before the transaction in question he had been released from the asylum and had actively engaged in business. Appellee who calls in question his capacity to join with her in mortgaging her property holds title to the mortgaged property under a deed from him executed subsequent to his release from the asylum. There is showing that he worried himself into a state of frenzy the night before the execution of the mortgage, but the evidence as to his mental condition at the time the instrument was executed clearly indicates that he knew and understood

the effect thereof, and had mind sufficient to consent to the wife's mortgage of her property.

Under the pleadings and proof, the contention that the mortgage is of no effect because of defect or irregularity in certificate of acknowledgement is without merit. This conclusion renders it unnecessary to discuss other questions argued by counsel for appellants.

Reversed, with directions to set aside the judgment appealed from and to enter judgment in conformity with this opinion.