In the Matter of Dallas O. WILLIAMS.
No. 6–58.

United States District Court
District of Columbia.
Jan. 14, 1958.

Oliver Gasch, U. S. Atty., Edward P. Troxell, Principal Asst. U. S. Atty., Washington, D. C., for respondent.

George Rublee, II, Nestor S. Foley, Washington, D. C., for petitioner.

KEECH, District Judge.

This matter is before the court on a writ of habeas corpus seeking the discharge of the petitioner, Dallas O. Williams, from the custody of the Superintendent of Saint Elizabeths Hospital, to which he was committed by order of this Court in Mental Health No. 34–58, "pending the outcome of proceedings to be forthwith instituted by the Mental Health Commission."

At the time of the signing of the order of commitment, the petitioner was before the court for presentation of the certified copy of the judgment and opinion of the United States Court of Appeals for the District of Columbia Circuit, reversing his conviction in Criminal No. 1572–49 for lack of due process. Williams v. United States, D.C.Cir., 250 F.2d 19. The government requested that the court, before receiving the mandate of the Court of Appeals in the criminal case, consider the petition of the United States Attorney, on behalf of the Superintendent of the District of Columbia Jail, that the Mental Health Commission examine Williams and report its findings to the Court.

The petition, sworn to by the United States Attorney, recited:

"1. Dallas O. Williams, colored, male and about 43 years old, was charged with assault with a dangerous weapon in November, 1949. He has had five trials, two resulting in mistrials and three in convictions. Defendant was adjudicated incompetent and committed to St. Elizabeth's Hospital three times during the period of these trials. Now, after the fifth trial, which resulted in conviction, the United States Court of Appeals for the District of Columbia Circuit has reversed and remanded with instructions to dismiss the indictment.

"2. *The staff of St. Elizabeth's Hospital advised that Dallas O. Williams at the present time shows no evidence of active mental illness but that he is potentially dangerous to others and if released is likely to repeat his patterns of criminal behavior, and might commit homicide.*

"3. This petition is filed pursuant to the opinion of the United States Court of Appeals in Williams v. United States [D.C.Cir., 250 F.2d 19], decided November 1, 1957, wherein that Court stated: 'It is open to the Government, however, to proceed for a civil commitment under D.C.Code 21–326, if it considers that, with Williams at large in his present state, "the rights of persons and of property will be jeopardized or the preservation of public peace imperiled and the commission of crime rendered probable."'" (Emphasis supplied.)

The petition then prayed that the Commission on Mental Health be directed to examine petitioner and report its findings to the Court and that he be committed to Saint Elizabeths Hospital pending determination of the need for his continued confinement in a mental institution. Attached to the petition were the unsworn statements of Doctors Cody and Platkin, two psychiatrists who had examined the petitioner on December 28, 1957, at the jail.[1]

---

1. Dr. Platkin's report concluded with the following paragraph:

"Summarizing the present examination: Mr. Williams appears to be a man of grossly average intelligence, *who at the present time shows no evidence of active mental illness.* However, in view of his history, as provided by himself, and the long-standing pattern of drinking, gambling, and fighting, with frequent arrests for carrying, possession of, and assault with dangerous weapons; the absence of any regular occupational adjustment, and persistent difficulties with the law; it would not seem realistic to expect that this man could reenter the community without being a danger to it. His attitude of suspiciousness and re-

The court granted this petition for commitment, "sitting as a court of equity." The order did not provide any definite term of temporary commitment. Thereafter a supplemental order was signed by the court, directing the Mental Health Commission to include certain specific findings in its report.[2]

The petition for a writ of habeas corpus followed. Issuance of the writ was granted, and a full hearing has now been had before this court upon the return to the writ. The sole issue in this proceeding is whether the petitioner is lawfully restrained by the respondent. At the outset, it should be pointed out that, inasmuch as there is no criminal charge now pending against petitioner, there is no contention that any provision of the criminal code authorized his commitment. The legality of his confinement must therefore be tested solely upon the civil authority of this Court.

The respondent relies upon §§ 21–301 and 21–326 of the District of Columbia Code and the concluding suggestion of the Court of Appeals in its opinion reversing petitioner's criminal conviction.

■ Section 21–301 does not purport to provide any procedure for the commitment of insane persons. It merely deals with the court's power to superintend and direct the affairs of persons who have been adjudged non compos mentis, providing for appointment of committees or trustees for the management and preservation of insane persons' estates.[3]

■ Section 21–326, captioned "Apprehension and detention by police, without warrant, of insane persons found in public places," deals with just that subject.[4] Although it provides an emergency procedure for apprehension of persons thought to be insane, which

sentment toward authority; his refusal to admit or accept responsibility for the numerous crimes of which he has been convicted; and his apparent lack of anxiety or remorse over his past pattern of antisocial behavior, would tend to emphasize the potential danger that this man might offer the community."

Dr. Cody's report contained the following opinion:

"*Summary:* This is a middle-aged Negro male with a long antisocial history including several charges of assault. Alcohol appears to be an important precipitating factor in his criminal behavior. *While he shows no evidence of psychotic thinking today, it is probable that he was mentally ill a few years ago. At present there are no symptoms, singly or in the aggregate, which would justify a hospital commitment for this man.* However, it should be kept in mind that he is potentially definitely dangerous to others, and once released is likely to repeat his patterns of criminal behavior, including homicide." (Emphasis supplied.)

2. "Ordered that in the report by the Mental Health Commission findings of fact will be made as follows:

"1. Is Dallas O. Williams presently suffering from any mental disease, defect or any type of insanity? If the answer is 'No', state whether he previously has had any mental disease, defect or any

type of insanity, and if so, state the extent of his recovery and whether the illness is likely to recur in the event of his release from hospitalization.

"2. In the event said Dallas O. Williams is permitted to be at large, will he likely be dangerous to himself or will the rights of persons or of property be jeopardized or the preservation of public peace imperiled and the commission of crime rendered probable? If your answer to the foregoing question is 'Yes', state whether this is by reason of any present or likely future mental disease, defect, or form of insanity?"

3. Cooper v. Burton, 1942, 75 U.S.App.D.C. 298, 127 F.2d 741.

4. Section 21–326, D.C.Code: "Any member of the Metropolitan police of the District of Columbia or any other officer in said District authorized to make arrests is authorized and empowered to apprehend and detain, without warrant, *any insane person or person of unsound mind* found on any street, avenue, alley, or other public highway, or found in any public building or other public place within the District of Columbia; and *it shall be the duty of the policeman or officer so apprehending or detaining any such person to immediately file his affidavit with the major and superintendent of said Metropolitan police that he believes said person to be insane or of unsound mind,* incapable of taking

should not be defeated by an over-technical construction,[5] it does require that the arresting officer reasonably believe the person apprehended to be insane and incapable of managing his own affairs or a menace to the public peace, and authorizes only the initial arrest and detention.

The two sections of the Code which prescribe the basic procedure for preliminary commitment of insane persons are §§ 21–310 and 21–311.

Section 21–310 provides in part:[6]

"Any person with whom an alleged insane person may reside, or at whose house he may be, or the father or mother, husband or wife, brother or sister, or the child of lawful age of any such person, or the nearest relative or friend available, or the committee of such person, or an officer of any charitable institution, home, or hospital in which such person may be, or any duly accredited officer or agent of the Board of Public Welfare, or any officer authorized to make arrests in the District of Columbia who has arrested any alleged insane person under the provisions of sections 21–326 to 21–331, may apply for a writ de lunatico inquirendo and an order of commitment, or either thereof, for any alleged insane person in the District of Columbia, *by filing in the District Court of the United States for the District of Columbia*

*a verified petition therefore, containing a statement of facts upon which the allegation of insanity is based.*" (Emphasis supplied.)

Section 21–311, which authorizes commitment of alleged insane persons for psychiatric examination, provides that upon filing of the petition under § 21–310—

"accompanied by the affidavits of two or more responsible residents of the District of Columbia setting forth that *they believe the person therein named to be insane or of unsound mind,* the length of time they have known such person, that they believe such person to be incapable of managing his own affairs, and that such person is not fit to be at large or go unrestrained, and that if such person be permitted to remain at liberty the rights of persons and property will be jeopardized or the preservation of public peace imperiled or the commission of crime rendered probable, and *that such person is a fit subject for treatment by reason of his or her mental condition,* the court, or any judge thereof in vacation, may, in its or his discretion, issue an attachment for the immediate apprehension and detention, for preliminary examination, of such person in Saint Elizabeths Hospital and, unless found by the staff of Saint Elizabeths Hospital to be of sound

care of himself or herself or his or her property, and if permitted to remain at large or to go unrestrained in the District of Columbia the rights of persons and of property will be jeopardized or the preservation of public peace imperiled and the commission of crime rendered probable: *Provided, however,* That it shall be the duty of the major and superintendent of the said Metropolitan police to forthwith notify the husband or wife or some near relative or friend of the person so apprehended and detained whose address may be known to the said major and superintendent or whose address can by reasonable inquiry be ascertained by him." (Emphasis supplied.)

Arrest by the major and superintendent of the Metropolitan Police Department of "any indigent person alleged to be insane or of unsound mind or any alleged insane person of homicidal or otherwise dangerous tendencies found elsewhere in the District of Columbia than in the places mentioned in section 21–326" is authorized by § 21–327, D.C.Code, upon the affidavits of two or more responsible residents of the District that they believe the person to be insane and not fit to be at large.

5. Orvis v. Brickman, 1952, 90 U.S.App. D.C. 266, 196 F.2d 762.

6. The remainder of the section provides for voluntary commitment.

mind, therein for a period of *not exceeding thirty days.* * * * "

This section further provides:

"Persons arrested under the provisions of sections 21–326 to 21–331 shall be detained in Gallinger Municipal Hospital [7] *pending the filing of a petition as provided in section 21–310. Such petition shall be filed within forty-eight hours after such person shall have been admitted into Gallinger Municipal Hospital,* or, if such forty-eight-hour period shall expire on a Sunday or legal holiday, then not later than noon of the next succeeding day which is not a Sunday or legal holiday. The court, or any judge thereof in vacation, may, upon being satisfied of the sufficiency of the petition, sign an order authorizing the continued detention of said person in Gallinger Municipal Hospital and, unless found by the staff of Gallinger Municipal Hospital to be of sound mind, in Saint Elizabeths Hospital for *a period not exceeding thirty days from the time of his apprehension and detention. If such petition be not filed, and such order of court obtained within the aforementioned period, the person shall be discharged forthwith.* * * * " (Emphasis supplied.)

■ Under no statute is the court authorized to commit any person for mental examination on a petition which fails to state facts upon which an allegation of present insanity is based.

If it be considered that the Superintendent of the Jail was a "person with whom the alleged insane person may reside, or at whose house he may be," within the terms of § 21–310, obviously the statements attached to his petition did not fulfill the requirements of § 21–311, hence furnished no basis for the order of commitment. Aside from the fact that the psychiatrists' statements were unsworn, they contained no allegation of present insanity. Although both doctors indicated that they anticipated further antisocial behavior by the petitioner upon his release to society and believed him to be a potential danger to others, neither stated that he believed, or that there was ground to believe, that petitioner is presently suffering from a mental illness or mental defect which requires treatment or restraint in a mental institution.[8]

■ Conceding that there is a rebuttable presumption of continuing insanity where one has been adjudged insane,[9] the last judicial determination of this petitioner's mental state was a finding of competency to stand trial [10] by order filed December 5, 1955; and even without such judicial determination, any presumption of continuing insanity would be rebutted by the statements of the psychiatrists upon which respondent relies.

If § 21–326 be loosely interpreted so as to include the Superintendent of the Jail, the United States Attorney, or the court within the term an "officer in said District authorized to make arrests", as previously noted that section authorizes only the arrest and detention of the alleged insane person, to be followed up within forty-eight hours by a petition under § 21–310 alleging insanity and a thirty-day order of commitment under § 21–311. More than forty-eight hours have passed since petitioner's original commitment without the filing of such a petition or signing of such order.

■ While the closing statement in the Court of Appeals' opinion may be interpreted as giving color to the right to commit a person merely because he is a potential danger to the community,

---

7. Now District of Columbia General Hospital.

8. See footnote 1.

9. Life Ins. Co. of Virginia v. Herrmann, D.C.Mun.App.1944, 35 A.2d 828.

10. This was based upon a certification by the Superintendent of Saint Elizabeths Hospital advising that defendant had recovered his reason, was of sound mind, and had been discharged from treatment in the Hospital November 22, 1955.

the quotation from § 21–326 is a mere fragment and must be read in context with the balance of the section. Further, § 21–326 must be read together with the other sections of the civil insanity statute, particularly §§ 21–310 and 21–311, which implement the procedure initiated under § 21–326.

The transcript of the hearing preceding the signing of the order of commitment indicates that the court purported to act under an inherent equity jurisdiction to deal with insane persons. In the District of Columbia, § 21–311 of the Code lays down the conditions upon which the court may exercise its equity jurisdiction to commit persons for psychiatric examination. Even if one concedes that there is a margin of authority remaining to the court which has not been restricted by the Code provisions, it is apparent from the recitations of the petition for commitment, the very terms of the court's supplemental order, and the transcript of the proceedings before the court on that petition, that there has been no finding or allegation of belief that the petitioner is presently insane.

■ However commendable was the court's purpose to protect the public from the release to society of a man "potentially dangerous to others," there is no District of Columbia statute or inherent equity power permitting commitment to any institution upon that showing alone. Many persons who are released to society upon completing the service of sentences in criminal cases are just as surely potential menaces to society as is this petitioner, having a similar pattern of anti-social behavior, lack of occupational adjustment, and absence of remorse or anxiety; yet the courts have no legal basis of ordering their continued confinement on mere apprehension of future unlawful acts, and must wait until another crime against society is committed or they are found insane in proper mental health proceedings before confinement may again be ordered.

■■ The Court of Appeals, which by reversing petitioner's conviction necessitated his release from custody on criminal charges, without any finding as to his present mental state, did not, and could not, suggest that petitioner be committed to a mental institution, temporarily or permanently, via civil proceedings without compliance with the insanity statute and on a mere showing that he may reasonably be expected to commit further criminal offenses. The procedural provisions of § 21–301 et seq. were enacted by the Congress for the protection of all persons alleged to be insane in civil proceedings, and the statutory safeguards were not withheld from those with criminal records.

It would indeed be anomalous if a person who, after arrest, indictment, plea of not guilty, defense of insanity, and conviction by jury of a felony, is ordered by the Court of Appeals to be released because of a lack of due process in his trial, could thereafter be incarcerated in civil insanity proceedings without due process.

■ This court is conscious, as was the United States Attorney, of the need for protection not only of the community but also of individuals in need of psychiatric care and treatment. But these laudable purposes, under our form of government, must be accomplished by procedures which are legal and not at the cost of disregarding constitutional safeguards by deprivation of liberty without due process of law. The mere fact that a commitment without due process is temporary and for the purpose of psychiatric examination renders it no less unlawful. As broad as the general equity jurisdiction of the judicial system is, it cannot be said to override specific statutory provisions or constitutional guarantees of personal liberty.

For the foregoing reasons, I am constrained to grant the petition of Dallas O. Williams for release from the custody of the respondent.